920 A.2d 34

George M. LIVINGSTON, IV

v.

Thomas O. NAYLOR.

No. 12, Sept. Term, 2005.

Court of Special Appeals of Maryland.

March 30, 2007.

Paige E. Harris, Alexandria, VA, Timothy J. McGary, Fairfax, VA, for appellant.

David H. Martin, Arlington, VA, for appellee.

Panel DAVIS, EYLER, JAMES R., MEREDITH, JJ.

MEREDITH, J.

George M. Livingston, IV, appeals an order of the Circuit Court for Montgomery County that denied his motion to dismiss a writ of garnishment of his wages. The garnishment had been issued in an effort to collect monies owed by Livingston to Thomas Naylor, appellee. Naylor had obtained a money judgment against Livingston in North Carolina and then enrolled that judgment in Maryland pursuant to the Uniform Enforcement of Foreign Judgments Act ("UEFJA"), Maryland Code (1974, 2006 Repl.Vol.), Courts and Judicial Proceedings Article ("CJ"), §§ 11–801 *et seq.* Livingston is a resident of North Carolina. He argues that the Maryland court did not have an adequate basis to exercise personal jurisdiction over him, and was, therefore, without power to (a) enroll the judgment from another state, and (b) order the garnishment of wages he earned as an employee of Marriott International, Inc. ("Marriott").

We hold that there were sufficient contacts between Livingston and this State for Maryland to enroll a judgment from another state pursuant to the UEFJA. We further hold that the Maryland courts may garnish Livingston's property in

Maryland, including compensation he earned from Marriott for services Livingston rendered in Maryland. But we also hold that due process does not permit the garnishment in Maryland of compensation Livingston earned for services rendered wholly outside the State of Maryland when such garnishment order is based solely upon the fact that Livingston's employer, Marriott, does business in this State that subjects Marriott to the jurisdiction of the Maryland courts. We vacate the circuit court's judgment that denied Livingston's motion to dismiss the writ of garnishment and remand for further proceedings.

## Facts and Procedural Background

In June 1995, in North Carolina, Livingston broke into the home of Thomas Naylor, who was then asleep. Livingston battered Naylor and inflicted serious bodily injuries. Livingston was subsequently convicted in North Carolina of assault with a deadly weapon and second degree burglary.

Seeking money damages, Naylor filed suit against Livingston in state court in North Carolina, and Livingston was properly served. Livingston failed to answer the complaint, and an "Entry of Default" was entered against him. After the Entry of Default, Livingston failed to appear for a hearing, and, as a consequence, a default judgment was entered against Livingston in favor of Naylor in the amount of $50,000. Naylor contends that Livingston was afforded all appropriate substantive and procedural rights under the laws of North Carolina, and Livingston does not dispute that contention. The judgment has not been satisfied.

Livingston is a North Carolina resident who has been employed by Marriott since 1996 at various locations in North Carolina, Virginia, and Maryland. After the default judgment was entered, Livingston moved from North Carolina to Virginia, where Naylor successfully instituted garnishment proceedings against Marriott.

Livingston next moved back to North Carolina, and Naylor initiated garnishment proceedings there as well. Naylor's

attempt to garnish Livingston's wages in North Carolina failed, however, because wages are apparently exempt from garnishment in that state. *See Harris v. Hinson,* 87 N.C.App. 148, 151, 360 S.E.2d 118, 120–21 (1987) (citing General Statutes of North Carolina, § 1–362, as exempting from attachment "the earnings of the debtor for his personal services, at any time within 60 days next preceding the order," and also noting that "the courts of North Carolina have held that wages for personal services to be earned constitute neither property nor debt"). *See also Wierse v. Thomas,* 145 N.C. 261, 59 S.E. 58 (1907).

In 2004, Livingston was assigned to work temporarily in Maryland, where he served as a "bench manager," *i.e.,* a manager who works in a relief role for short periods of time at various Marriott hotels. Livingston concedes that he stayed in Maryland and worked as a bench manager for approximately one month to one-and-a-half months. But Livingston contends he never changed his residence from North Carolina. He proffered that even when he worked at Marriott locations in Maryland, his pay was processed by a Marriott payroll facility in Kentucky, and his compensation, reduced by withholdings for North Carolina income tax, was directly deposited via electronic transfer into his North Carolina bank account.

Pursuant to the UEFJA, the North Carolina judgment was enrolled in the judgment records of the Circuit Court for Montgomery County, Maryland, on September 20, 2004. On October 13, 2004, the Circuit Court for Montgomery County issued a Writ of Garnishment of Wages that was served upon Marriott in Bethesda, Maryland. Both Livingston and Marriott filed motions to dismiss the writ of garnishment on jurisdictional grounds. On March 3, 2005, the circuit court entered an order denying both of the motions to dismiss. Livingston timely appealed the denial of his motion to dismiss the writ of garnishment.

Livingston raises the following two issues:

1. Whether the trial court was without proper personal jurisdiction over [Livingston] to enter a judgment in this

matter as required by the U.S. Supreme Court decision of *International Shoe v. Washington* [, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)].

2. Whether the trial court was without proper personal jurisdiction over [Livingston] to entertain a garnishment of [Livingston's] wages in this matter as required by the U.S. Supreme Court decision of *International Shoe v. Washington* as applied to garnishment or execution proceedings in *Shaffer v. Heitner* [, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977)].

■ Both questions attack the personal jurisdiction of the circuit court. Our standard of review for such questions is *de novo. See Bond v. Messerman,* 391 Md. 706, 718, 895 A.2d 990 (2006) ("The defense of lack of personal jurisdiction ordinarily is collateral to the merits and raises questions of law.").

## Analysis

### 1. Enrollment of judgment from another state

The circuit court followed the procedure required by the UEFJA when it enrolled the judgment that had been previously rendered in North Carolina. But Livingston contends that, under the due process requirement set forth in *International Shoe,* the Maryland court could not enroll the North Carolina judgment unless the State of Maryland had sufficient minimum contacts with Livingston in order to exercise personal jurisdiction over him.

Livingston has cited no case that has held that a judgment from another state may not be enrolled pursuant to the UEFJA unless the receiving state has sufficient contact with the judgment debtor to assert personal jurisdiction in accordance with the requirements of *International Shoe.* Nevertheless, he posits the following syllogism. Before the UEFJA was adopted, a judgment creditor who wished to enroll a judgment that had been rendered in another state was required to file a new action in the receiving state, and such a suit could not be prosecuted unless the receiving state could obtain personal jurisdiction over the judgment debtor. *See*

*Mike Smith Pontiac, GMC, Inc. v. Mercedes–Benz of North America, Inc.*, 356 Md. 542, 552, 741 A.2d 462 (1999) ("Historically, the party seeking to enforce a judgment in a sister state had to bring a separate court action in that state.").[1] When the UEFJA was adopted, it purported to make no substantive changes in the law, but merely provide for a streamlined procedure. *Id.* at 555, 741 A.2d 462 ("[B]ecause the UEFJA is intended 'merely to streamline the procedure' of filing a new suit, and not to alter substantive rights, whatever rights or defenses a party may have had with respect to an independent action in the enforcement state, that party also has with respect to the judgment filed under UEFJA."); *Weiner v. Blue Cross of Maryland, Inc.*, 730 F.Supp. 674, 677 (D.Md. 1990) ("the [UEFJA] ... does not purport to alter any substantive rights or defenses that otherwise would be available either to the judgment creditor or the judgment debtor if suit were filed to enforce that foreign judgment."), *aff'd*, 925 F.2d 81 (4th Cir.), *cert. denied*, 502 U.S. 816, 112 S.Ct. 69, 116 L.Ed.2d 43 (1991). Therefore, Livingston argues, because the receiving state needed personal jurisdiction over the judgment debtor before the enactment of UEFJA, and the uniform act made no substantive changes in the law, then the receiving state must have the same basis for exercising personal juris-

---

1. In *Hospelhorn v. General Motors Corp.*, 169 Md. 564, 576–77, 182 A. 442 (1936), the Court made reference to the need for an independent suit:

> In *Cole v. Cunningham*, 133 U.S. 107, 112, 10 S.Ct. 269, 270, 33 L.Ed. 538, 541 [(1890)], the court said that the Constitution "did not make the judgments of the states domestic judgments, to all intents and purposes, but only gave a general validity, faith, and credit to them as evidence. No execution can be issued upon such judgments without a new suit in the tribunals of other states; and they enjoy, not the right of priority or privilege or lien which they have in the state where they are pronounced, but that only which the *lex fori* gives to them, by its own laws, in their character of foreign judgments. [Citations omitted]"

Similarly, the RESTATEMENT (SECOND) OF CONFLICT OF LAWS (1971) stated in Comment b to § 100: "[T]he method usually employed in this country for the enforcement of a foreign judgment for the payment of money is to bring a new action in the nature of debt upon the judgment in the forum State and to obtain a new judgment there."

diction now, even though that is not one of the express requirements of UEFJA.

■ We need not decide the constitutional question raised by Livingston in order to conclude that Naylor's North Carolina judgment was properly enrolled in Maryland pursuant to the UEFJA. *See Burch v. United Cable Television of Baltimore Ltd. P'ship,* 391 Md. 687, 695, 895 A.2d 980 (2006) ("Even when a constitutional issue is properly raised at trial and on appeal, . . . this Court will not reach the constitutional issue unless it is necessary to do so."). Even if we assume without deciding that Livingston is correct in his assertion that the receiving state must have sufficient minimum contacts to take action against the judgment debtor, we conclude that there were sufficient contacts with Livingston for the Maryland court to enroll a judgment against him.

Livingston concedes the validity of the underlying North Carolina judgment, stating in his reply brief:

To be clear[,] the Defendant in this matter[, Livingston,] contests neither the validity of the North Carolina judgment, nor the power of that court to enter the judgment in the first instance. Rather[,] the Defendant argues that the *International Shoe* Mandate of sufficient minimum contacts precludes the courts of Maryland [from enforcing] that foreign judgment in this state, absent such minimum contacts.

■ Accordingly, the judgment entered against Livingston by the North Carolina courts is valid, and is, therefore, entitled to full faith and credit in Maryland. *Cf. Legum v. Brown,* 395 Md. 135, 147, 909 A.2d 672 (2006)(the burden is on a person resisting enforcement of a foreign judgment to produce "competent evidence" that the court that entered the judgment did not have personal jurisdiction over him).

Because Livingston concedes the validity of the North Carolina judgment, Maryland and all other states are constitutionally mandated to give that judgment full faith and credit. As the Supreme Court stated in *Underwriters Assur. Co. v. N.C.*

*Guaranty Assn.*, 455 U.S. 691, 704, 102 S.Ct. 1357, 71 L.Ed.2d 558 (1982):

> [T]he Framers provided that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." U.S. Const., Art. IV, § 1. This Court has consistently recognized that, in order to fulfill this constitutional mandate, "the judgment of a state court should have the same credit, validity, and effect, in every other court of the United States, which it had in the state where it was pronounced." *Hampton v. McConnel*, 3 Wheat. 234, 235, 4 L.Ed. 378 (1818) (Marshall, C.J.); *Riley v. New York Trust Co., supra*, 315 U.S. 343, at 353, 62 S.Ct., at 614, 86 L.Ed. 885 [(1942)].

*See also Superior Court v. Ricketts*, 153 Md.App. 281, 326, 836 A.2d 707 (2003) (" '[a] final judgment in one State, if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, qualifies for recognition throughout the land' ") (quoting *Baker v. General Motors Corp.*, 522 U.S. 222, 233, 118 S.Ct. 657, 139 L.Ed.2d 580 (1998)).

With respect to the question of whether the State of Maryland had a sufficient basis to exercise personal jurisdiction over Livingston at the time Naylor sought to enroll the North Carolina judgment in this State, assuming *arguendo* that such a jurisdictional basis is required, we note that the Court of Appeals summarized the standard for determining the issue in *Mackey v. Compass Marketing, Inc.*, 391 Md. 117, 129–30, 892 A.2d 479 (2006):

> Determination of personal jurisdiction is a two-step process. First, the requirements under the long-arm statute must be satisfied, and second, the exercise of jurisdiction must comport with due process. Maryland has construed our long-arm statute to authorize the exercise of personal jurisdiction to the full extent allowable under the Due Process Clause. *See, e.g., Beyond v. Realtime*, 388 Md. 1, 15, 878 A.2d 567, 576 (2005); *Geelhoed v. Jensen*, 277 Md. 220, 224, 352 A.2d 818, 821 (1976). Thus, the evaluation becomes one of determining whether the defendant's actions satisfy the minimum

contacts required by due process so that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316, 66 S.Ct. at 154. The Court must be assured that defendant's contacts with Maryland "are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

*Accord MaryCLE, LLC v. First Choice Internet, Inc.*, 166 Md.App. 481, 498, 890 A.2d 818 (2006).

The Fourth Circuit Court of Appeals described the test for a state's exercise of jurisdiction over an out-of-state party in a case in which the plaintiff sought to enforce in Maryland a Russian arbitration award against a Russian company that had shipped a quantity of aluminum to Maryland. In *Base Metal Trading, Limited v. OJSC "Novokuznetsky Aluminum Factory,"* 283 F.3d 208, 213 (4th Cir.), *cert. denied*, 537 U.S. 822, 123 S.Ct. 101, 154 L.Ed.2d 30 (2002), the court stated:

> Due process requires only that a defendant "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). For these minimum contacts to exist, there must "be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

The court rejected the contention that jurisdiction to enforce the foreign arbitration award in Maryland could be founded upon the Russian company's single shipment of aluminum to Maryland (even if that transaction had the corresponding effect of creating a debt "in Maryland" owed by the

Maryland purchaser to the Russian company). The court noted that the presence of the defendant's property alone was not a sufficient connection to support the exercise of jurisdiction. It stated, *id.*:

This basic analysis is not altered when the defendant's property is found in the forum state. The Supreme Court's decision in *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), eliminated all doubt that the minimum contacts standard in *International Shoe* governs *in rem* and *quasi in rem* actions as well as *in personam* actions. *Shaffer*, 433 U.S. at 207–12, 97 S.Ct. 2569, 53 L.Ed.2d 683. The Court held that "in order to justify an exercise of jurisdiction *in rem*, the basis for jurisdiction must be sufficient to justify exercising jurisdiction over the interests of persons in a thing." *Id.* at 207, 97 S.Ct. 2569, 53 L.Ed.2d 683 (internal quotations omitted). And "[t] he standard for determining whether an exercise of jurisdiction over the interests of persons is consistent with the Due Process Clause is the minimum-contacts standard elucidated in *International Shoe." Id.*

Of course, the presence of property in a state may have an impact on the personal jurisdiction inquiry. Indeed, "when claims to the property itself are the source of the underlying controversy between the plaintiff and the defendant, it would be unusual for the State where the property is located not to have jurisdiction." *Id.* Yet, when the property which serves as the basis for jurisdiction is completely unrelated to the plaintiff's cause of action, the presence of property alone will not support jurisdiction. *Id.* at 209, 97 S.Ct. 2569, 53 L.Ed.2d 683. While, "the presence of the defendant's property in a State might suggest the existence of other ties among the defendant, the State, and the litigation," when those "other ties" do not exist, jurisdiction is not reasonable. *Id.*

Although Livingston argues that his contact with Maryland does not rise to the level prescribed in *Miserandino v. Resort Properties, Inc.*, 345 Md. 43, 50, 691 A.2d 208 ("regular or systematic conduct will be required to sustain jurisdiction"),

*cert. denied,* 522 U.S. 953, 118 S.Ct. 376, 139 L.Ed.2d 292 (1997), Livingston concedes that he resided and worked in Maryland for at least four to six weeks prior to the date Naylor sought to enroll the North Carolina judgment. We need not decide whether such contact would have been sufficient to support personal jurisdiction over Livingston for all manner of litigation. But it certainly is sufficient contact for a Maryland court to enroll a final judgment from another state without, in the words of *International Shoe,* "offend[ing] 'traditional notions of fair play and substantial justice.'" 326 U.S. at 316, 66 S.Ct. 154. Livingston's period of resident employment in Maryland was not "random, fortuitous, or attenuated" contact with this State. *See Burger King v. Rudzewicz,* 471 U.S. 462, 473, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Nor was it so brief or fleeting that Livingston could not "reasonably anticipate being haled into court [ ]here." *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Accordingly, it was not a violation of Livingston's due process rights for the circuit court to enroll Naylor's North Carolina judgment pursuant to the UEFJA.

Although we have assumed *arguendo* that another state's judgment could only be enrolled if the receiving state had sufficient contacts with the judgment debtor to exercise personal jurisdiction, as we noted above, Livingston has directed us to no case that has so held. There are a number of cases that support the contrary position. *See, e.g., Shaffer, supra,* 433 U.S. at 210, 97 S.Ct. 2569, stating: "[W]e know of nothing to justify the assumption that a debtor can avoid paying his obligations by removing his property to a State in which his creditor cannot obtain personal jurisdiction over him. The Full Faith and Credit Clause, after all, makes the valid *in personam* judgment of one State enforceable in other sister States." (Footnotes omitted. This comment and *Shaffer* footnote 36 are examined more fully in the next section of this opinion.) *Cf. Lenchyshyn v. Pelko Electric, Inc.,* 281 A.D.2d 42, 47, 723 N.Y.S.2d 285, 289 (2001) (concluding that "a party seeking recognition in New York of a foreign money judgment

(whether of a sister state or a foreign country) need not establish a basis for the exercise of personal jurisdiction over the judgment debtor by the New York courts")(citing *Shaffer, supra,* 433 U.S. at 210 n. 36, 97 S.Ct. 2569). One commentator, citing *Shaffer* footnote 36, states: "[A] state may enforce a sister state judgment even if the enforcing state does not have personal jurisdiction over the debtor." Aristides Diaz–Pedrosa, *Shaffer's Footnote 36,* 109 W. VA. L. REV. 17, 31 (2006). Courts in several states have held that their state need not have personal jurisdiction over the person or property of an obligor under a foreign support order prior to registering such order pursuant to the Uniform Reciprocal Enforcement of Support Act; *see, e.g., Lagerwey v. Lagerwey,* 681 P.2d 309, 311 (Alaska 1984); *Gingold v. Gingold,* 161 Cal.App.3d 1177, 1185, 208 Cal.Rptr. 123, 127 (1984); *Wilson v. Ransom,* 233 Neb. 427, 434, 446 N.W.2d 6, 10–11 (1989); *Pinner v. Pinner,* 33 N.C.App. 204, 207, 234 S.E.2d 633, 636 (1977); *Davanis v. Davanis,* 132 Wis.2d 318, 327, 392 N.W.2d 108, 112 (Wis.App. 1986). *But cf. Williamson v. Williamson,* 247 Ga. 260, 275 S.E.2d 42 (1981)(although acknowledging "we are bound by the Full Faith and Credit Clause to recognize the validity of the Arizona [divorce] decree in this State," 247 Ga. at 262, 275 S.E.2d at 44, the court nevertheless dismissed wife's suit to enforce the decree in Georgia, concluding, "the plaintiff has failed to demonstrate that the defendant has property in this State, [and therefore] there is no res, and personal service would be required to domesticate the decree," 247 Ga. at 264, 275 S.E.2d at 46).

## 2.  Garnishment of wages of non-resident

█ Our conclusion that there were sufficient contacts with Livingston for Maryland to recognize the North Carolina judgment, however, does not necessarily dispose of Livingston's second contention that the judgment should not be enforced by means of garnishing his wages. The Court of Appeals recognized in *Smith Pontiac, supra,* 356 Md. at 562, 741 A.2d 462, that there is a "distinction between recognition and enforcement" of a foreign judgment. "While this Court

must recognize this judgment [domesticated in Maryland pursuant to the UEFJA] as a valid Maryland judgment, this Court also may inquire into post-judgment defenses in order to determine the extent to which it is enforceable." *Id. See also Baker v. General Motors Corp., supra*, 522 U.S. at 235, 118 S.Ct. 657, where the Court stated:

> Full faith and credit, however, does not mean that States must adopt the practices of other States regarding the time, manner, and mechanisms for enforcing judgments. Enforcement measures do not travel with the sister state judgment as preclusive effects do; such measures remain subject to the evenhanded control of forum law. See *McElmoyle ex rel. Bailey v. Cohen*, 13 Pet. 312, 325, 10 L.Ed. 177 (1839) (judgment may be enforced only as "laws [of enforcing forum] may permit"); see also Restatement (Second) of Conflict of Laws § 99 (1969) ("The local law of the forum determines the methods by which a judgment of another state is enforced.").

Livingston contends that the principles articulated in *Shaffer v. Heitner* require that the judgment creditor establish that Livingston has sufficient contacts with Maryland to support the garnishment of wages owed to Livingston by an employer that does business in Maryland. Livingston argues that even though his employer, Marriott, is a Maryland corporation that has its corporate headquarters in Maryland, Livingston has at all times relevant been a resident and domiciliary of the state of North Carolina. Accordingly, Livingston argues that his relatively brief temporary presence in Maryland while on assignment for his employer should not support the garnishment of wages that are normally paid to him in North Carolina. He further argues that his own ability to sue Marriott in any state in which Marriott does business in not a circumstance that, standing alone, makes it fair for his third party creditors to pursue garnishment of his wages in all states in which Marriott does business.

Citing *Harris v. Balk*, 198 U.S. 215, 25 S.Ct. 625, 49 L.Ed. 1023 (1905), the circuit court rejected Livingston's argument that the court needed to meet the *International Shoe* stan-

dard with respect to the judgment debtor in addition to the garnishee. Because it is clear that there is a sufficient basis for the exercise of personal jurisdiction over Marriott in Maryland, the circuit court was of the view that any indebtedness owing from Marriott to Livingston, including wages, is subject to garnishment by the Maryland courts, regardless of the source of that obligation, *i.e.*, regardless of whether the indebtedness is attributable to wages earned by Livingston for services performed outside the State of Maryland. The circuit court quoted the following passage from *Harris, supra,* 198 U.S. at 222, 25 S.Ct. 625:

> If there be a law of the State providing for the attachment of the debt, then if the garnishee be found in that State, and process be personally served upon him therein, we think the court thereby acquires jurisdiction over him, and can garnish the debt due from him to the debtor of the plaintiff and condemn it, provided the garnishee himself could be sued by his creditor in that State.

The Supreme Court summarized its ruling in *Harris:* "Power over the person of the garnishee confers jurisdiction on the courts of the State where the writ issues." *Id.* The circuit court relied upon this principle in denying Livingston's motion to dismiss.

Early Maryland cases held that "[a]ll property ... within the limits of the State, whether belonging to residents or nonresidents, is subject to its laws, and the State has the right to prescribe how and in what manner such property shall be subjected to the claims of creditors." *Coward v. Dillinger,* 56 Md. 59, 60–61 (1881). Upon the theory that a debt is property *(i.e.,* an asset of the party that is owed that indebtedness) that is "located" where the debtor may be sued, Maryland cases have historically focused upon the garnishment court's jurisdiction over the garnishee rather than the judgment debtor.

For example, in *Cole v. Randall Park Holding Co.,* 201 Md. 616, 627, 95 A.2d 273 (1953), the Court of Appeals referred to a text wherein "the learned author says that a foreign corporation doing business in the State may be summoned as a

garnishee whether the principal defendant is a resident or nonresident, by service of process such as would give jurisdiction over it if it were the principal defendant." The Court in *Cole* further observed, *id.* at 628, 95 A.2d 273, that garnishments focus upon the property, or "the *res*" to be seized:

Another reason which supports the Maryland holdings is that garnishment proceedings commence as proceedings *in rem* or *quasi in rem*. Subsequently, they may result in judgments *in personam* against the garnishee or real defendant, or both, in various situations. Nevertheless, since fundamentally they seek to compel the appearance of the defendant by seizure of the *res*, the Court issuing the attachment must have jurisdiction of the *res. Coward v. Dillinger* [, 56 Md. 59 (1881),] and *U.S. Express Co. v. Hurlock*, [120 Md. 107, 87 A. 834 (1913),] both *supra*. If it is an intangible, such as a debt owed by the garnishee, the debt must either be payable expressly in this State or jurisdiction must be had over the debtor.

*See also Goodyear Tire & Rubber Company v. Ruby*, 312 Md. 413, 422–24, 540 A.2d 482 (1988) (focusing on the sufficiency of contacts between the garnishee and the State of Maryland).

Livingston contends the circuit court erred in relying on the above quoted passage from *Harris* and its debt-follows-the-debtor analysis. Livingston argues that the due process requirements for a state to exercise *in rem* jurisdiction have changed, and that the current controlling principles are set forth in *Shaffer, supra*, and *Rush v. Savchuk*, 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980). Livingston cites no case that specifically holds that unless the garnishing state has sufficient minimum contacts with the judgment debtor *Shaffer* and *Rush* preclude the post-judgment attachment of wages earned by an out-of-state judgment debtor. But Livingston argues that such result is compelled by *Shaffer* and *Rush*.

In *Shaffer*, the Supreme Court held that, for a pre-judgment attachment of property, even though the proceeding is *quasi in rem*, the state court issuing the attachment needed to have some basis for exercising *in personam* jurisdiction over the

out-of-state owner of the property. Abandoning the *Harris* standard that permitted *in rem* jurisdiction to be exercised based upon the presence of property alone, the Court in *Shaffer* stated that "the time is ripe to consider whether the standard of fairness and substantial justice set forth in *International Shoe* should be held to govern actions *in rem* as well as *in personam.*" 433 U.S. at 206, 97 S.Ct. 2569. And the Court expressly held that the *International Shoe* standard governs actions *in rem. Id.* at 212, 97 S.Ct. 2569.

The Court noted that even though *in rem* cases had traditionally been analyzed as involving only property, such cases nevertheless involve and affect the owners' rights in such property. The Court quoted Justice Holmes's statement that "[a]ll proceedings, like all rights, are really against persons," *id.* at 207 n. 22, 97 S.Ct. 2569, and stated, *id.* at 207, 97 S.Ct. 2569 (footnotes omitted):

> The case for applying to jurisdiction *in rem* the same test of "fair play and substantial justice" as governs assertions of jurisdiction *in personam* is simple and straightforward. It is premised on recognition that "(t)he phrase, 'judicial jurisdiction over a thing,' is a customary elliptical way of referring to jurisdiction over the interests of persons in a thing." Restatement (Second) of Conflict of Laws § 56, Introductory Note (1971) (hereafter Restatement). This recognition leads to the conclusion that in order to justify an exercise of jurisdiction *in rem*, the basis for jurisdiction must be sufficient to justify exercising "jurisdiction over the interests of persons in a thing." The standard for determining whether an exercise of jurisdiction over the interests of persons is consistent with the Due Process Clause is the minimum-contacts standard elucidated in *International Shoe.*

After noting that application of the *International Shoe* standard might have little impact upon some *in rem* cases, such as litigation involving "claims to the property itself," the Court acknowledged that the new standard might have a significant impact upon *quasi in rem* cases, stating, *id.* at 208–09, 97 S.Ct. 2569:

For the type of *quasi in rem* action typified by *Harris v. Balk* and the present case, however, accepting the proposed analysis would result in significant change. These are cases where the property which now serves as the basis for state-court jurisdiction is completely unrelated to the plaintiff's cause of action. Thus, although the presence of the defendant's property in a State might suggest the existence of other ties among the defendant, the State, and the litigation, the presence of the property alone would not support the State's jurisdiction. If those other ties did not exist, cases over which the State is now thought to have jurisdiction could not be brought in that forum.

Recognizing that its holding would be at odds with a "long history of jurisdiction based solely on the presence of property in a State," *id.* at 211, 97 S.Ct. 2569, the Court nevertheless held that "all assertions of state-court jurisdiction must be evaluated according to the standards set forth in *International Shoe* and its progeny." *Id.* at 212, 97 S.Ct. 2569. More fully, the Court stated, *id.* at 211–12, 97 S.Ct. 2569 (footnotes omitted):

We are left, then, to consider the significance of the long history of jurisdiction based solely on the presence of property in a State. Although the theory that territorial power is both essential to and sufficient for jurisdiction has been undermined, we have never held that the presence of property in a State does not automatically confer jurisdiction over the owner's interest in that property. This history must be considered as supporting the proposition that jurisdiction based solely on the presence of property satisfies the demands of due process, cf. *Ownbey v. Morgan,* 256 U.S. 94, 111, 41 S.Ct. 433, 438, 65 L.Ed. 837 (1921), but it is not decisive. "[T]raditional notions of fair play and substantial justice" can be as readily offended by the perpetuation of ancient forms that are no longer justified as by the adoption of new procedures that are inconsistent with the basic values of our constitutional heritage. Cf. *Sniadach v. Family Finance Corp.,* 395 U.S., at 340, 89 S.Ct., at 1822; *Wolf v. Colorado,* 338 U.S. 25, 27, 69 S.Ct. 1359, 1361, 93 L.Ed.

1782 (1949). The fiction that an assertion of jurisdiction over property is anything but an assertion of jurisdiction over the owner of the property supports an ancient form without substantial modern justification. Its continued acceptance would serve only to allow state-court jurisdiction that is fundamentally unfair to the defendant.

We therefore conclude that all assertions of state-court jurisdiction must be evaluated according to the standards set forth in *International Shoe* and its progeny.

(Emphasis added.)

Leaving no doubt that *Shaffer* was intended to supercede prior cases addressing *in rem* and *quasi in rem* jurisdiction, the Court stated, *id.* at 212 n. 39, 97 S.Ct. 2569:

It would not be fruitful for us to re-examine the facts of cases decided on the rationales of *Pennoyer [v. Neff,* 95 U.S. 714, 24 L.Ed. 565 (1877),] and *Harris* to determine whether jurisdiction might have been sustained under the standard we adopt today. To the extent that prior decisions are inconsistent with this standard, they are overruled.

Livingston argues that the above statements in *Shaffer* clearly required that the Maryland court satisfy the *International Shoe* standard of having sufficient minimum contacts with him—and not just the garnishee—before garnishing his wages. He supplements his argument by referring to *Rush v. Savchuk,* 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980), another case involving a prejudgment attachment in which the Court emphasized that jurisdiction must satisfy the *International Shoe* standard. In *Rush,* 444 U.S. at 327, 100 S.Ct. 571, the Court recapped its *Shaffer* holding as follows:

In *Shaffer v. Heitner* we held that "all assertions of state-court jurisdiction must be evaluated according to the standards set forth in *International Shoe* and its progeny." 433 U.S., at 212, 97 S.Ct., at 2584. That is, a State may exercise jurisdiction over an absent defendant only if the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional

notions of fair play and substantial justice.' " *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). In determining whether a particular exercise of state-court jurisdiction is consistent with due process, the inquiry must focus on "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner, supra,* 433 U.S., at 204, 97 S.Ct., at 2580.

Rejecting the argument that an insurer's contractual obligation to defend and indemnify a nonresident insured was an intangible *res* that would support *quasi in rem* jurisdiction for a garnishment of that obligation, the Court reiterated that it had held in *Shaffer* that such jurisdiction could not be based upon the presence of such property alone, stating, 444 U.S. at 328, 100 S.Ct. 571:

We held in *Shaffer* that the mere presence of property in a State does not establish a sufficient relationship between the owner of the property and the State to support the exercise of jurisdiction over an unrelated cause of action. The ownership of property in the State is a contact between the defendant and the forum, and it may suggest the presence of other ties. 433 U.S., at 209, 97 S.Ct., at 2582. Jurisdiction is lacking, however, unless there are sufficient contacts to satisfy the fairness standard of *International Shoe.*

Livingston's argument that *Shaffer* requires all actions *in rem* to satisfy the *International Shoe* standard with respect to jurisdiction over the defendant, as well as the defendant's property, also finds support in the concurring opinion of Justice Brennan, writing for himself and three other Justices (Marshall, Blackmun and O'Connor), in *Burnham v. Superior Court of California, County of Marin,* 495 U.S. 604, 629, 110 S.Ct. 2105, 109 L.Ed.2d 631 (1990), stating, *id.* at 631–32, 110 S.Ct. 2105 (footnotes omitted):

Lower courts, commentators, and the American Law Institute all have interpreted *International Shoe* and *Shaffer* to mean that *every* assertion of state-court jurisdiction, even one pursuant to a "traditional" rule such as transient juris-

diction, must comport with contemporary notions of due process.

Justice Scalia's opinion in *Burnham*, 495 U.S. at 607, 110 S.Ct. 2105, asserted that the impact of the holding in *Shaffer* was more limited in scope, but even his explanation of *Shaffer* appears to agree that it extended the jurisdictional requirements of *International Shoe* to all cases involving a defendant who is not present within the state. Justice Scalia, writing for himself and two other Justices (Rehnquist and Kennedy), stated, *id.* at 620–21, 110 S.Ct. 2105:

> *Shaffer* ... stands for nothing more than the proposition that when the "minimum contact" that is a substitute for physical presence consists of property ownership it must, like other minimum contacts, be related to the litigation.
>
> \* \* \*
>
> *Shaffer* was saying, in other words, not that all bases for the assertion of *in personam* jurisdiction (including, presumably, in-state service) must be treated alike and subjected to the "minimum contacts" analysis of *International Shoe;* but rather that *quasi in rem* jurisdiction, that fictional "ancient form," and *in personam* jurisdiction, are really one and the same and must be treated alike—leading to the conclusion that *quasi in rem* jurisdiction, *i.e.,* that form of *in personam* jurisdiction based upon a "property ownership" contact and by definition unaccompanied by personal, in-state service, must satisfy the litigation-relatedness requirement of *International Shoe.*
>
> \* \* \*
>
> *International Shoe* confined its "minimum contacts" requirement to situations in which the defendant "be not present within the territory of the forum," 326 U.S., at 316, 66 S.Ct., at 158, and nothing in *Shaffer* expands that requirement beyond that.

In 4A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1070 at 283–84 (3d ed.2002) (footnotes omitted), the authors state that, "[a]t a minimum, ... it seems clear that *[Shaffer]* requires both state and federal

courts to examine carefully any action based on quasi-in-rem jurisdiction to make certain that the minimum contacts and fair play and substantial justice standards established by the Supreme Court are met." *Cf. Republic Properties Corporation v. Mission West Properties, LP*, 391 Md. 732, 746–47, 895 A.2d 1006 (2006)(jurisdiction over foreign limited partnership requires minimum contact with state even if the limited partnership's resident agent is served with process within the state). *See also Cable News Network L.P., L.L.L.P. v. CNNews.com*, 162 F.Supp.2d 484, 490 (E.D.Va.2001) (after characterizing attachment proceedings as "quasi *in rem* II" actions, stating: "*Shaffer* clearly holds that quasi *in rem* II and *in personam* proceedings require the same minimum contacts so as to satisfy due process. . . ."), *aff'd in part, vacated in part on other grounds*, 56 Fed.Appx. 599 (4th Cir.2003).

Other courts have observed that, although *Shaffer* and *Rush* clearly changed the rules for analyzing the requirements for jurisdiction to *initiate* an action *in rem* or *quasi in rem*, both *Shaffer* and *Rush* dealt with pre-judgment attachments, rather than a post-judgment garnishment such as we are concerned with in Livingston's case. In *Shaffer*, 433 U.S. at 210, 97 S.Ct. 2569, the Supreme Court acknowledged that one rationale proffered in support of the old rule that treated the presence of property alone as a sufficient basis for exercising jurisdiction over the assets of an absentee defendant is that "a wrongdoer 'should not be able to avoid payment of his obligations by the expedient of removing his assets to a place where he is not subject to an in personam suit,'" citing RESTATEMENT (SECOND) CONFLICT OF LAWS § 66, Comment a (1971). Addressing this concern, as noted above, the Court stated, *id.* (footnotes omitted):

[W]e know of nothing to justify the assumption that a debtor can avoid paying his obligations by removing his property to a State in which his creditor cannot obtain personal jurisdiction over him. The Full Faith and Credit Clause, after all, makes the valid *in personam* judgment of one State enforceable in all other States.

In a footnote to this passage, the Court offered the view that its treatment of post-judgment attachments might be different from its treatment of pre-judgment attachments, stating, in *dicta, id.* at 210 n. 36, 97 S.Ct. 2569:

[O]nce it has been determined by a court of competent jurisdiction that the defendant is a debtor of the plaintiff, there would seem to be no unfairness in allowing an action to realize on that debt in a State where the defendant has property, whether or not that State would have jurisdiction to determine the existence of the debt as an original matter.

■ The Maryland appellate courts have not, to date, addressed note 36 of *Shaffer* and the extent to which *Shaffer* imposes any jurisdictional limits upon post-judgment collection proceedings. Other courts have reached this issue, however, and several have held that a state need not establish minimum contacts with a defendant in order to garnish property held by the defendant in the state where a garnishment action is filed.

The Fourth Circuit emphasized the distinction between post-judgment garnishments and attachments on original process in *Smith v. Lorillard, Inc.,* 945 F.2d 745 (4th Cir.1991), a case in which a person subject to a Kentucky judgment lived in North Carolina and worked for the Lorillard corporation in North Carolina. After the Kentucky court served a wage garnishment upon Lorillard (apparently in Kentucky), the judgment debtor filed suit in North Carolina to enjoin the garnishment of his wages. The judgment debtor argued that the garnishment order was erroneously entered because he was not a resident of Kentucky when the garnishment order was issued. As a consequence, the judgment debtor argued, the Kentucky court no longer had proper jurisdiction over him because *Shaffer* required the Kentucky court to re-establish a current jurisdictional basis before taking action against him. The court summarized the judgment debtor's argument, *id.* at 746:

It is Smith's position that the district court below [*i.e.,* for the District of North Carolina], before according full faith and credit to the order of garnishment of the Kentucky

court, U.S. Const. art. IV, § 1, had to satisfy itself that the Kentucky court's exercise of garnishment over Smith's wages, because Smith had moved to another state, was a proper assertion of *in rem* jurisdiction under *Shaffer*.

Noting that *"Shaffer* set limits only on the *original* assertion of *in rem* and *quasi in rem* jurisdiction over nonresident defendants, not on the imposition of an ancillary order of garnishment flowing from a judgment for which the court originally had *in personam* jurisdiction over the creditor of the garnishee," *id.,* the court held that "[t]he Kentucky court's jurisdiction over [the judgment debtor] . . . continued from the original assertion of jurisdiction and did not have to be established anew at the time the judgment creditors sought their orders of garnishment." *Id. Accord Levi Strauss & Company v. Crockett Motor Sales, Inc.,* 293 Ark. 502, 507, 739 S.W.2d 157, 159 (1987) (although judgment debtor had moved away from state that originally entered judgment, court ruled that due process does not require a renewal of basis for personal jurisdiction before a state can issue garnishment to aid in the collection of the judgment it had rendered). *See also Champion International Corporation v. Ayars,* 587 F.Supp. 1274, 1275 (D.Conn.1984)(state that entered divorce decree and order for child support payments garnished former husband's wages by serving his employer at its principal place of business in that state, even though husband had moved to Ohio and no longer earned wages in Connecticut; court noted that it clearly had personal jurisdiction over the husband as well as the garnishee); *Goodyear Tire & Rubber Company v. Ruby,* 312 Md. 413, 540 A.2d 482 (1988)(divorced wife whose husband had moved to Texas sought to assert a lien in Maryland against husband's earnings; no issue raised regarding limitations imposed by *Shaffer); State Department of Revenue v. Control Data Corporation,* 300 Or. 471, 476, 713 P.2d 30, 32 (1986)(Oregon courts that had previously entered judgment for unpaid Oregon taxes could garnish taxpayer's wages due from a national corporation even after the taxpayer relocated to, and worked in, another state).

Livingston's position is slightly different from that of the judgment debtors in *Lorillard, supra,* and *Levi Strauss, supra,* because the court now garnishing Livingston's wages *(i.e.,* the Maryland court) did not have personal jurisdiction over Livingston at the time the original underlying judgment was entered in North Carolina. Nevertheless, because we have concluded that Maryland had a sufficient basis to exercise *in personam* jurisdiction over Livingston at the time Naylor's judgment was enrolled in Maryland pursuant the UEFJA, the reasoning of the *Lorillard* and *Levi Strauss* courts supports the ability of the Maryland courts to order "the ancillary remedy of garnishment" without having to establish personal jurisdiction anew at the time the garnishment was requested. *Accord Poston v. Poston,* 161 Vt. 591, 593, 657 A.2d 1076, 1078 (1993) (once court obtains personal jurisdiction over a defendant, the jurisdiction persists in subsequent ancillary proceedings).

In *Lenchyshyn v. Pelko Electric, Inc.,* 281 A.D.2d 42, 723 N.Y.S.2d 285, 289–90 (App.Div.2001), New York's intermediate appellate court concluded that *Shaffer* footnote 36 means that New York did not need to have personal jurisdiction over a foreign judgment debtor in order to enforce a foreign judgment in New York. *Id.* The *Lenchyshyn* court observed that "[t]hose courts that have cited the Shaffer footnote [n. 36] have held uniformly that no jurisdictional basis for proceeding against the judgment debtor need be shown before a foreign judgment will be recognized or enforced in a given state." *Id. Accord Huggins v. Deinhard,* 134 Ariz. 98, 102–03, 654 P.2d 32, 36–37 (Ariz.App.1982) (citing *Shaffer* footnote 36, and concluding "there is no unfairness in allowing the [judgment creditor] to realize on that debt in Arizona where the [judgment debtor] has property [*viz.,* an Arizona bank account]"); *Bank of Babylon v. Quirk,* 192 Conn. 447, 450, 472 A.2d 21 (1984)("Having been given fair notice and an opportunity to defend the action on the merits in the state of New York, the defendant cannot be heard to complain because the plaintiff seeks to enforce that judgment against property situated in this state."); *Tabet v. Tabet,* 644 So.2d 557, 559 (Fla.Dist.Ct.

App.1994)("The minimum contacts requirement of the due process clause does not prevent Florida from enforcing another state's valid judgment against a judgment-debtor's property located here, regardless of the lack of other minimum contacts by the judgment-debtor." (Citing *Shaffer* footnote 36.)); *Williamson v. Williamson*, 247 Ga. 260, 263, 275 S.E.2d 42, 45 (". . . if it can be shown that the defendant has property in [Georgia], there would be no difficulty in enforcing the Arizona judgment against him here. Personal jurisdiction over the defendant would, of course, not be required."), *cert. denied*, 454 U.S. 1097, 102 S.Ct. 669, 70 L.Ed.2d 638 (1981); *Hexter v. Hexter*, 179 Ind.App. 638, 639, 386 N.E.2d 1006, 1007 (1979)(interpreting *Shaffer* footnote 36 to mean that opinion has no application to post-judgment full faith and credit actions); *Ruiz v. Lloses*, 233 N.J.Super. 608, 611, 559 A.2d 866, 867 (App.Div.1989)("Footnote 36 in *Shaffer* makes it clear that ownership of property by the nonresident debtor is sufficient to confer personal jurisdiction in a [post-judgment] Full Faith and Credit situation"); *Fraser v. Littlejohn*, 96 N.C.App. 377, 380, 386 S.E.2d 230, 232 (1989) (citing *Shaffer* footnote 36 to mean the opinion has no application to post-judgment full faith and credit actions); *Black v. Black*, 119 R.I. 127, 139, 377 A.2d 1308, 1315 (1977) ("Under the new rule, however, a post-judgment attachment of property in one state to realize on a debt will satisfy the new standards if, as in this case, a court of competent jurisdiction in another state has determined the existence of the debt."); *Berger v. Berger*, 138 Vt. 367, 370, 417 A.2d 921, 922 (1980)("Recognizing that under the facts in *Shaffer*, the footnote in question [footnote 36] is dicta, we are nonetheless inclined to follow it. There is nothing in the concept of justice and fair play that requires a second opportunity to litigate the liability established by a valid judgment."); *Koh v. Inno–Pacific Holdings, Ltd.*, 114 Wash. App. 268, 54 P.3d 1270 (2002)(citing footnote 36, and conclud-

ing: "Here, it is registration of the foreign judgment in conjunction with the presence of the property that satisfies due process."). *Cf. Electrolines, Inc. v. Prudential Assurance Company, Ltd.,* 260 Mich.App. 144, 162–63, 677 N.W.2d 874, 885 (2003)("*Lenchyshyn* is helpful only where a party demonstrates that property of the judgment debtor is located within the jurisdiction of the court.... [I]n an action brought to enforce a judgment, the trial court must possess jurisdiction over the judgment debtor or the judgment debtor's property."), *appeal denied,* 470 Mich. 886, 682 N.W.2d 89 (2004).

We conclude that Livingston's property in Maryland, if any, is subject to garnishment to aid in the enforcement of the judgment that was entered in North Carolina and enrolled in Maryland pursuant to the Uniform Enforcement of Foreign Judgments Act, CJ §§ 11–801 *et seq.*

■ Recognizing "this State's right to subject all property within its borders to its laws," *Belcher v. Government Employees Insurance Company,* 282 Md. 718, 720, 387 A.2d 770 (1978), the more difficult question is whether any or all of Livingston's wages constitute a *res* "within" the State of Maryland that is subject to being garnished in Maryland. *See* WRIGHT & MILLER, *supra,* in which the authors note that it is more difficult to determine whether property is "within" a state when the property is intangible, stating, § 1070 at 280:

Ordinarily, the question whether or not there is property within the court's territorial reach that will provide a jurisdictional base is a simple one since the situs of realty or tangible personalty is not difficult to determine. But when the property used as the in rem or quasi-in-rem base is an intangible, the question is more difficult since property of that character only has a legal situs; it does not have an actual or physical situs.

*See id.,* § 1071 at 295 ("determining the situs of intangible property, such as notes, bonds, and debts, let alone even more evanescent forms of property, for jurisdictional purposes long has been a source of difficulty and confusion").

Although *Shaffer* footnote 36 has been interpreted by some courts to mean that the *International Shoe* standard has no application whatsoever to post-judgment collection proceedings, Professor Laurence noted in his article, Robert Laurence, *The Off–Reservation Garnishment of an On–Reservation Debt and Related Issues in the Cross–Boundary Enforcement of Money Judgments*, 22 Am. Indian L.Rev. 355, 369 (1998)(footnote omitted), that intangible property, such as wages, presents a situation calling for a more sophisticated analysis:

This statement [footnote 36] is truly the "opinion" of the Court, for it is dicta in the purest sense, where the Court was speculating on the impact of the present decision on a case not then before it. Such speculation, of course, can go awry, as the Court may be thinking of an easy future case, rather than a hard one. In footnote thirty-six, the Court was probably imagining the case of a straightforward execution against tangible personal property, and not an attempt to reach, via garnishment process in one jurisdiction, wages that were earned in another.[2]

Professor Laurence contends that *Shaffer* footnote 36 produces acceptable results when the subject of the post-judgment attachment is tangible property, because the physical presence of such property within the borders of the attaching state can be readily verified, citing as an example *Bank of Babylon v. Quirk, supra,* 192 Conn. 447, 472 A.2d 21 (permitting the attachment of a boat docked in Connecticut to satisfy a judgment rendered in New York against a resident of Tennessee). When the object of the post-judgment enforcement proceeding is an employee's wages earned in the course of employment for a corporation that could be sued in multiple states, however, Professor Laurence contends that the traditional notion of fair play may well be offended in the absence

---

**2.** This same comment appears in an earlier iteration of Professor Laurence's article, Robert Laurence, *Out–of–State Garnishments: Work–in–Progress, Ofered in Tribute to Dr. Robert A. Leflar,* 50 Ark. L. Rev. 415, 419–20 (1997).

of some requirement of minimum contacts between the judgment debtor (i.e., the employee) and the state intercepting the wages. Professor Laurence states, 22 Am. Indian L.Rev. at 370:

> Suppose the Bank [the judgment creditor in *Bank of Babylon v. Quirk, supra,*] had been trying to reach Quirk's [*i.e.,* the judgment debtor's] wages, earned in Tennessee working for an employer whose corporate headquarters were in Connecticut, say the Connecticut General Life and Casualty Insurance Company. Or, to make the connection between Quirk and Connecticut even weaker, suppose Quirk worked in Tennessee for an employer principally located in Arkansas, incorporated in Delaware, but which conducted business in Connecticut, say Wal–Mart, Inc. Now one may have difficulty seeing the sense of the *dicta* in footnote 36. Giving a Tennessee defendant a fully fair trial on the underlying cause of action in New York may well comport with the requirements of *International Shoe.* However, the appropriateness comes into question when state enforcement process goes on without any due process restraints in a state with which the defendant has such an attenuated connection.
>
> **When post-judgment process attempts to reach something as intangible as wages payable,** the constitutional dimensions of the problem change dramatically, a point that the *dicta* in footnote 36 missed. Constitutional "fair play and substantial justice" should now be required both for the garnishee—who is the nominal defendant in the garnishment—and the original defendant, who is the real party in interest. That is to say, **a garnishment is only proper in a jurisdiction which has the constitutionally minimum contacts with both the garnishee and the defendant.**

(Emphasis added.) *Cf. Desert Wide Cabling & Installation, Inc. v. Wells Fargo & Co., N.A.,* 191 Ariz. 516, 516, 958 P.2d 457 (Ariz.App.1998) ("an Arizona court does not have jurisdiction to issue a writ of garnishment to attach a bank account [maintained at] an out-of-state branch of an interstate bank which does business in Arizona").

Livingston's case illustrates both the perfectly-acceptable and the not-so-acceptable results of interpreting *Shaffer* footnote 36 to impose no standard of "fair play and substantial justice" in connection with post-judgment garnishments served upon corporations that have multi-state or nationwide operations. With respect to wages earned by Livingston while working for Marriott on-site at Maryland facilities, we have little concern about the fairness of subjecting such wages to a garnishment by the Maryland courts, even though similar wages are exempt from garnishment in North Carolina. Other Maryland wage-earners are not exempt from garnishment, and there is no unfairness in subjecting Livingston's wages in Maryland to the same sort of garnishment that can reach the wages of other wage-earners in Maryland. With respect to wages that are earned by a North Carolina resident while working at facilities that are wholly within the State of North Carolina, however, and in the absence of some other connection between Maryland and either the North Carolina wage-earner or the underlying controversy that resulted in the original North Carolina judgment, we recognize a lack of fair play and substantial justice in permitting such wages to be garnished by operation of a Maryland court order.

We conclude the solution lies in reconsidering the necessarily fictional situs that the law currently assigns to wages-payable. If Marriott paid its employees in gold coins, it might be easier to trace the situs of such payments and identify the single state in which such coins are located at any given time. But in the case of many, if not most, employees in modern times, wages are paid via electronic transfers ordered by corporate employers that are present in all 50 states, and transferred from the employer's financial institution (that is itself also present in all 50 states) to the employee's financial institution (that is also present in all 50 states). We question whether it is possible to ascertain when such intangible property is within the territorial borders of any particular state at any given point in time.

Livingston and Naylor urge us to resort to contrary legal maxims to determine whether a state can properly consider

wages to constitute a *res* within the borders of a state, subject to the state's power of garnishment. Citing *Harris v. Balk,* 198 U.S. at 222, 25 S.Ct. 625, Naylor contends that the situs of the debt Marriott owes Livingston for any earned wages is determined by the location of the debtor, Marriott. Naylor quotes from *Harris:* "The obligation of the debtor to pay his debt clings to and accompanies him wherever he goes." *Id.* Naylor points out that it is the debt owed by Marriott that is the subject of the garnishment action, again quoting from *Harris,* 198 U.S. at 223, 25 S.Ct. 625: "It is nothing but the obligation to pay which is garnished or attached." Naylor further quotes *Harris,* 198 U.S. at 225, 25 S.Ct. 625, saying: " ' "All debts are payable everywhere, unless there be some special limitation or provision in respect to the payment, the rule being that debts as such have no *locus* or *situs,* but accompany the creditor everywhere, and authorize a demand upon the debtor everywhere." ' " Naylor argues that Marriott could, therefore, be garnished for the wages it owed to Livingston at any location where Marriott regularly does business. And Naylor emphasizes that Maryland is a particularly appropriate location because Marriott maintains its worldwide corporate headquarters in this State.

Livingston, on the other hand, contends that the accrued wages are intangible assets owned by him, and he asserts that such property is deemed to be located where the owner resides, citing *Delaware v. New York,* 507 U.S. 490, 113 S.Ct. 1550, 123 L.Ed.2d 211 (1993), where the Court observed that "intangible property 'is not physical matter which can be located on a map,' " *id.* at 498, 113 S.Ct. 1550, and the Court further referred to "the common-law 'concept of *"mobilia sequuntur personam,"* according to which intangible personal property is found at the domicile of its owner.' " *Id.* at 503, 113 S.Ct. 1550 (quoting *Texas v. New Jersey,* 379 U.S. 674, 680 n. 10, 85 S.Ct. 626, 13 L.Ed.2d 596 (1965)).

The Supreme Court's comment in *Rush* regarding the situs of intangible property also supports Livingston's position regarding the presence *vel non* of his wages in Maryland. In *Rush,* the Court stated, 444 U.S. at 330, 100 S.Ct. 571:

To say that "a debt follows the debtor" is simply to say that intangible property has no actual situs, and a debt may be sued on wherever there is jurisdiction over the debtor. State Farm is "found," in the sense of doing business, in all 50 States and the District of Columbia. Under appellee's theory, the "debt" owed to Rush would be "present" in each of those jurisdictions simultaneously. It is apparent that such a "contact" can have no jurisdictional significance.

We are guided by the decisions of several states that have grappled with an analogous issue regarding efforts to garnish compensation owed to individuals in the military. In *Williamson v. Williamson, supra,* 247 Ga. 260, 275 S.E.2d 42, a divorced wife who was a resident of Georgia, several years after an Arizona divorce, sought to have the Arizona decree enrolled in Georgia, with a view to collecting unpaid child support due from the husband, who was then serving in the United States Army, stationed in and residing in California. The wife argued that "[the husband's] property within the state [of Georgia] gives this court jurisdiction for the enforcement of the Arizona judgment to the extent of his property within the state [of Georgia]." 247 Ga. at 261, 275 S.E.2d at 43. The property that the wife contended was located within the state of Georgia was the salary the husband earned for serving in the Army, even though the wife proffered no evidence that the husband's salary had any specific connection with the state of Georgia. The wife's theory was that the Army was subject to being garnished in all 50 states, and therefore, any wage obligation it owed to any of its employees could be garnished in any state without regard to the location of the employee. The wife argued, 247 Ga. at 263, 275 S.E.2d at 45:

> [U]nder 42 U.S.C. § 659(a) the United States has made itself present as a garnishee in this state; that the defendant's paycheck is "constructively" present within the state and, as such, may be garnished even though the paycheck is not issued within the state; and that this paycheck is property on which jurisdiction for this action may be based.

The court rejected the contention that the obligation owed by the Army for the husband's salary "is 'property' which is constructively present in every state in the Union." 247 Ga. at 264, 275 S.E.2d at 46. The court concluded that the wife had "not met her burden of showing that the [husband] has any property in this state." *Id.* The *Williamson* court's analysis was subsequently adopted by the courts in *Polacke v. Superior Court In and For County of Maricopa,* 170 Ariz. 217, 224, 823 P.2d 84, 91 (1991), *review denied,* 170 Ariz. 217, 823 P.2d 84 (1991), and *Ferguson v. Ferguson,* 634 N.E.2d 506, 509 (Ind.App.1994).

█ Just as the presence of the United States Army in all 50 states was not sufficient to support garnishments of compensation in states having no connection with that compensation, we conclude that the presence of Marriott in all 50 states is not sufficient to support garnishments of its employees in states having no connection with the employees' earning of such wages. Although an employer may be present in all 50 states, as Marriott is, that fact does not support the conclusion that every employee's wages are present in all such locations and, therefore, subject to garnishment in all 50 states. In contrast to Marriott's presence in multiple states, the location of the employee when rendering the services that gave rise to the wages is easily identified.

We conclude that in Livingston's case, in addition to the state of his residence, the state in which he rendered the labor that gave rise to Marriott's obligation to pay wages is the state that can garnish Marriott for those wages without offending the due process standard of fair play and substantial justice.

In this case, we are not dealing a situation in which Maryland had any prior contact with the underlying litigation, in contrast to the employees whose wages were garnished pursuant to a court's ancillary or continuing jurisdiction in *Smith v. Lorillard, supra,* 945 F.2d 745, and *Levi Strauss, supra,* 293 Ark. 502, 739 S.W.2d 157. *See also Goodyear Tire, supra,* 312 Md. 413, 540 A.2d 482. We are not dealing with a support

order as in *Champion International Corporation v. Ayars,* 587 F.Supp. 1274, 1276 (D.Conn.1984), and *Gingold v. Gingold, supra,* 161 Cal.App.3d at 1184, 208 Cal.Rptr. at 127. We are not dealing with a situation in which Livingston owns any tangible property, real or personal, that is located within the borders of this State. *Cf. Bank of Babylon, supra,* 192 Conn. 447, 472 A.2d 21 (boat docked in state could be attached to satisfy judgment rendered in another state against non-resident); *Tabet, supra,* 644 So.2d at 559 (real estate). Nor are we dealing with any intangible property that, with any degree of confidence, can be deemed situated within the territorial borders of Maryland, such as a bank deposit held in a state savings institution or an ownership interest in a business venture that does business in Maryland. *Cf. Huggins, supra,* 134 Ariz. at 100, 654 P.2d at 34 (bank account in state); *Koh, supra,* 114 Wash.App. at 273–74, 54 P.3d at 1273–74 (Washington court allowed California judgment creditor to obtain charging order against a Washington limited liability company). Under such circumstances, we conclude that the only *res* owned by Livingston within the borders of this State and properly garnishable in this State would be the wage obligation owed to Livingston for services rendered while Livingston was physically present in this State.

This result places Livingston's judgment creditor on the same footing with respect to Livingston's wages as the creditor enjoys with respect to tangible property: the creditor can utilize the Maryland courts to attach any of Livingston's tangible property located in this State, but not that located beyond Maryland's borders, and the creditor can use the Maryland courts to garnish wages Livingston earns for services rendered at Marriott locations in this State but not those earned for services rendered beyond Maryland's borders. In Livingston's particular case, this result places the North Carolina judgment holder on the same footing in Maryland as he enjoys in North Carolina with respect to garnishment of wages earned for services rendered in North Carolina. This approach also avoids the potential unfairness that could arise if a judgment creditor from a distant state enrolls a judgment

in Maryland pursuant to the UEFJA and serves a wage garnishment on the corporation that is the judgment debtor's employer, hoping the judgment debtor will not contest the action even if there are defenses or exemptions that might otherwise be applicable.

Accordingly, we remand this case to the Circuit Court for Montgomery County for further proceedings.

**JUDGMENT OF THE CIRCUIT COURT FOR MONT-GOMERY COUNTY IS VACATED. CASE REMANDED FOR FURTHER PROCEEDINGS.**

**COSTS TO BE DIVIDED EVENLY BETWEEN AP-PELLANT AND APPELLEE.**