LEVI STRAUSS & COMPANY *v.* CROCKETT MOTOR SALES, INC.

87-88 739 S.W.2d 157

Supreme Court of Arkansas
Opinion delivered November 9, 1987

*Hollingsworth & Heller, P.A.,* by: *Raymond Easterwood,* for appellant.

*Walker & Poff,* by: *Frank A. Poff, Jr.,* for appellee.

TOM GLAZE, Justice. This conflict of laws case involves a garnishment proceeding against appellant, Levi Strauss & Co., on wages earned by one of its employees, Gloria Penn, who now

lives in Tennessee. In this proceeding, appellee, Crockett Motor Sales, Inc., seeks to garnish earnings earned by Penn while working in a Levi Strauss plant located in Tennessee. Levi Strauss, a foreign corporation registered to do business in Arkansas, answered Crockett Motor's writ of garnishment, stating that Strauss's Little Rock plant, where Penn previously worked, had closed, and she now worked in its facility at Powell, Tennessee. Crockett Motor controverted Levi Strauss's answer, alleging Strauss has an agent for service of process in Arkansas, and is required to comply with the writ of garnishment. After both parties argued whether the trial court had jurisdiction to issue a writ of garnishment, the trial court held that it did and ordered Strauss to comply with the writ. There being no other issues raised concerning the garnishment proceeding, Strauss brings this appeal challenging the court's jurisdiction.[1]

 Crockett Motor bases its argument that the trial court has jurisdiction upon this court's holding in *Stone* v. *Drake*, 79 Ark. 384, 96 S.W.2d 197 (1906). There, Stone garnished the Texas & Pacific Railway Company for a debt due (wages owed) its employee Drake, who worked and resided in Texas. Stone previously had obtained an Arkansas default judgment against Drake and brought the garnishment action against the railway company, a Texas corporation, because it had an agent and had tracks and trains located in the state. This court sustained Stone's garnishment action. The court, quoting from *Harvey* v. *Great Northern Railway Co.*, 50 Minn. 405, 52 N.W. 905 (1892), set out the rule which has been recognized by this state for the past eighty years. The court said:

> While, by fiction of law, a debt, like other personal property, is for most purposes, as, for example, transmission and succession, deemed attached to the person of the owner, so as to have its *situs* at his domicil, yet this fiction yields to laws for attaching the property of non-residents, because such laws necessarily assume that the property has a *situs* distinct from the owner's domicil. *For such purpose*

---

[1] In the alternative, Levi Strauss argues Arkansas was an inconvenient forum, but because that issue was never presented to or ruled upon by the trial court, we do not reach it on appeal.

*a debt has situs wherever the debtor or his property can be found. Wherever the creditor might maintain a suit to recover the debt, there it may be attached as his property, provided, of course, the laws of the forum authorize it.* (Emphasis supplied.)

*See also London & Lancashire Insurance Co.* v. *Payne,* 180 Ark. 638, 22 S.W.2d 165 (1929); *Person* v. *Williams-Echols Dry Goods Co.,* 113 Ark. 467, 169 S.W. 223 (1914); and *Kansas City, Pittsburg & Gulf Railway Co.* v. *Parker,* 69 Ark. 401, 63 S.W. 996 (1901). In following the foregoing rule, the *Stone* court concluded that because the non-resident Drake, by posting a bond, could maintain an action in Arkansas against the Texas & Pacific Railway Company (*see* § 959, *Kirby's Digest,* now Ark. Stat. Ann. § 27-2301 (Repl. 1979)) (non-resident plaintiff required to give bond for costs before filing action) and because the state authorized Stone to maintain a garnishment action to recover his debt, Stone's garnishment against the Texas & Pacific Railway Company was proper.

The law in *Stone* basically remains intact and this court has adhered to the rule that power over the person of the garnishee confers jurisdiction on the courts of the state where the writ issues. *London & Lancashire Insurance Co.* v. *Payne, supra.* Stated in still other terms, the court in *Person* v. *Williams-Echols Dry Goods Co., supra,* held that the situs of a debt, for purposes of garnishment, is not only at the domicile of the debtor, but in any state in which the garnishee may be found, provided the law of that state permits the debtor to be garnished, and provided the court acquires jurisdiction over the garnishee through his voluntary appearance or actual service of process upon him within the state.

The instant case, on its facts, has little to distinguish it from *Stone.* Here, Penn lived in Arkansas when she purchased an automobile from Crockett Motors and, upon defaulting on her contract, Crockett Motors obtained a judgment against her. While she still lived and worked for Levi Strauss in Arkansas, Crockett Motors garnished her wages earned in this state on two separate occasions. Levi Strauss's Little Rock plant had closed and Penn had moved to Tennessee when this third garnishment proceeding was commenced. Thus, as was the situation in *Stone,*

the creditor is located in Arkansas, the non-resident debtor wage earner lives in another state, but the wage earner's employer is subject to suit in Arkansas, since it registered to do business and does business in this state. Accordingly, if we follow the law established in *Stone* and its progeny, we clearly must hold the trial court had jurisdiction of the garnishment action against Levi Strauss.

Nonetheless, Levi Strauss urges us to follow Tennessee law which is set out in *Williams* v. *Williams*, 621 S.W.2d 567 (Tenn. Ct. App. 1981). There, the court held the Tennessee garnishment action must fail because a Texas resident could not obtain proper jurisdiction over his Texas employer in Tennessee for wages earned and payable in Texas, concluding the mere fact that the employer was a foreign corporation authorized to do business in Tennessee did not give Tennessee jurisdiction. In view of Arkansas' long adherence to the rule set out in *Stone*, we see no reason to depart from it.[2]

■ We also note Levi Strauss's argument that Arkansas's long arm statute, more particularly Ark. Stat. Ann. § 27-2502 (Repl. 1979), has limited the state's exercise of personal jurisdiction over only those persons whose conduct conforms with those acts specified in § 27-2502(C). Of course, as is duly provided in § 27-2502(F), other bases of jurisdiction were unaffected by the enactment of § 27-2502 and the state's courts may exercise jurisdiction on any other basis authorized by law.

■ Even so, we do take this opportunity to view the situs of debt rule adopted by our case law in light of the Supreme Court holding in *Shaffer* v. *Heitner*, 433 U.S. 186 (1977). The Court in *Shaffer* held that *quasi in rem* jurisdiction as well as personal jurisdiction over an absent defendant depend on the defendant's "contacts" with the forum state so as to meet "traditional notions of fair play and substantial justice," the formula stated in *International Shoe Co.* v. *Washington*, 326 U.S. 310 (1945). *See* R. Leflar, *American Conflicts Law* § 24A (3d ed. 1977). (Professor Leflar, in analyzing the effects of *Shaffer* v. *Heitner, supra*, concluded that *Harris* v. *Balk*, 198 U.S. 215 (1905), is no

---

[2] The Tennessee court in *Williams* referred to this rule as the situs of debt approach, which was a theory the court said was not followed in that state.

longer good law and that the garnishment of tangible property based on nothing more than service upon the obligor wherever he is found now violates the due process clause.)

In considering the situation here in view of the *Shaffer* holding, we have no difficulty in deciding that Penn, a non-resident defendant, had sufficient contacts with Arkansas and the litigation here to sustain the court's jurisdiction in this matter. We would first note that Crockett Motor did not initiate the garnishment action as a means by which to adjudicate a claim against Penn; it had already obtained a judgment against Penn at the time she lived and worked in Arkansas. The only changes having taken place since that judgment (and two garnishments after it was entered) were the closing of Levi Strauss's plant in Little Rock and the moving of Penn to Tennessee. Otherwise, Penn still works for Levi Strauss, albeit in Powell, Tennessee, and Strauss continues to do business in Arkansas—a foreign corporation which clearly is subject to suit in this state. Crockett Motors seeks only to satisfy its judgment by reaching Penn's earnings which are under the control of Levi Strauss. Unquestionably, Penn was present in Arkansas and had sufficient contacts for Crockett to obtain the judgment against her, and due process does not require a renewal of each of those contacts with this state in order that Crockett can collect on that judgment. *See Oregon ex rel. Department of Revenue v. Control Data Corp.*, 300 Or. 471, 713 P.2d 30 (1985). Suffice it to say, Penn's contacts, past and present, with this state are sufficient for us to sustain the trial court's exercise of jurisdiction in the garnishment proceeding below. Accordingly, we affirm.

HICKMAN, J., concurs. PURTLE, J., dissents.

DARRELL HICKMAN, Justice, concurring. I agree that under the peculiar facts of this case, the trial court's order should be affirmed.

I am not certain I would join in such a decision if the debtor and creditor were not both residents of Arkansas at the time of the judgment. Since I don't have to make that decision, I won't at this time. I also have the same reservations regarding the issue of a convenient forum.

JOHN I. PURTLE, Justice, dissenting. I am pleased that the

majority has adopted the practical view that it is not necessary that an order or judgment "dismiss the parties from court, discharge them from the action, or conclude their rights to the subject matter in controversy" to be appealable. See *Tapp* v. *Fowler*, 288 Ark. 70, 702 S.W.2d 17 (1986); *Fratesi* v. *Bond*, 282 Ark. 213, 666 S.W.2d 712 (1984); and ARAP Rule 2. The order appealed from in this case was an order by the trial court ordering the appellant to answer certain interrogatories. However, it is obvious that the trial court would have eventually ordered the appellant to pay into the court the attachable part of Ms. Penn's wages due under the garnishment proceedings.

I am not pleased that the majority has overreached the long arm of Arkansas law. Even though the Arkansas court had jurisdiction to issue this writ of garnishment, the court would not have the authority to compel the appellant to pay funds into the court earned by a non-resident judgment debtor in another state. The employee's wages at issue were not for services performed in Arkansas nor were they a result of her employer doing business in Arkansas.

The majority opinion essentially holds that a writ of garnishment, based upon an Arkansas judgment in favor of an Arkansas creditor, will reach the wages of a non-resident earned in another state, if the employer is doing business in both states. The effect of the holding gives the circuit courts of Arkansas jurisdiction over property located in Tennessee. I have no doubt that if the situation were reversed we would have no hesitancy in reaching the opposite result from that stated by the majority.

The United States Supreme Court in *Shaffer* v. *Heitner*, 433 U.S. 186 (1977), held that in rem and quasi in rem jurisdiction (as well as personal jurisdiction) over an absent defendant must be determined in light of the test found in *International Shoe* v. *Washington*, 326 U.S. 310 (1945). Thus, jurisdiction over the property of an absent defendant depends on the defendant's "contacts" with the forum state, and the exercise of such jurisdiction must not offend "traditional notions of fair play and substantial justice."

I understand Dr. Leflar and *Shaffer* v. *Heitner*, 433 U.S. 186 (1977) to require the opposite of the holding accomplished by the majority. Dr. Leflar, in *American Conflicts of Law* § 24 (3d ed.

1977), speaking about *Shaffer* states:

> [Shaffer] imposes far-reaching new due process of law
> limitations upon the exercise of judicial jurisdiction in rem
> and quasi in rem. It subjects this area of jurisdiction, or at
> least part of it that has permitted attachment or garnish-
> ment of choses in action at the place where an absent
> defendant's debtor is found, to the same constitutional
> requirement of "fair play and substantial justice" as
> prescribed in *International Shoe Co.* v. *Washington* [foot-
> note omitted] for in personam jurisdiction.

Clearly *Shaffer* made *International Shoe* applicable to in rem
actions as well as in personam. As Dr. Leflar stated, it had far
reaching effects. I understand it to overrule the so-called "situs of
the debt" theory which *Stone* v. *Drake*, 79 Ark. 384, 96 S.W. 197
(1906) and *Harris* v. *Balk*, 198 U.S. 215 (1905) followed. Under
this theory, the situs of the debt for purposes of garnishment, is
not only at the domicile of the judgment debtor, but in any state in
which a garnishee may be found.

The present case is identical to the situation in *Harris* v.
*Balk*, supra, which is no longer good law. In *Harris* v. *Balk*,
Epstein, a resident of Maryland, had a claim against Balk, a
resident of North Carolina. Harris, another North Carolina
resident, owed money to Balk. When Harris happened to visit
Maryland, Epstein garnished his debt to Balk. Harris did not
contest the debt to Balk and paid it to Epstein's North Carolina
attorney. When Balk later sued Harris in North Carolina, the
Supreme Court held that the Full Faith and Credit Clause, U.S.
Const. art. IV, § 1, required that Harris' payment to Epstein be
treated as a discharge of his debt to Balk. The Court reasoned that
the location of the debt traveled with the debtor.

In *Shaffer*, however, the Supreme Court overruled *Harris* v.
*Balk*. The Court held that in rem jurisdiction must be subjected
to the test found in *International Shoe*. In rejecting the "situs of
the debt" theory, the Court stated:

> We are left, then, to consider the significance of the long
> history of jurisdiction based solely on the presence of
> property in a State. . . . The fiction that an assertion of
> jurisdiction over property is anything but an assertion of

jurisdiction over the owner of the property supports an ancient form without substantial modern justification. Its continued acceptance would serve only to allow state court jurisdiction that is fundamentally unfair to the defendants.

Traditional notions of fair play and substantial justice do not seem to me to have been met by the majority opinion. The appellant has no property or wages in Arkansas which belong to the employee. The employee had no substantial contacts with Arkansas at the time of this garnishment proceeding. Neither she nor her property occupied an Arkansas situs.

My chief fear is not what this decision will do to the law; it is the effect it will have on employment. After all, the Arkansas law is only what we say it is on Monday mornings. But the disaster to employees, who become unemployed by plant reductions and closings, is obvious. Large employers are apt to decide to terminate an employee rather than transfer to another location. Another danger of this decision is that employers will be reluctant to hire new employees who have outstanding judgments against them. Therefore, this decision is harmful to both employers and employees.

Both sides rely on *Stone* v. *Drake*, 79 Ark. 384, 96 S.W.2d 197 (1906), and *Williams* v. *Williams*, 621 S.W.2d 657 (Tenn. Ct. App. 1981). The majority states this is a conflict of laws case and then proceeds to decide the case on due process of law. I believe the Tennessee case is the more reasoned resolution of this issue.

The appellant complied with the Arkansas law relating to doing business and appointing an agent for process. However, by doing so it did not consent to jurisdiction over obligations arising out of employment in Tennessee. It has no obligation to the appellee arising out of its Arkansas activities. It should be commended and not penalized for its policy of relocation of displaced employees.

I would reverse.