Daniel M. Mensah v. MCT Federal Credit Union, No. 54, Sept. Term, 2015 Opinion by
Battaglia, J.

**JUDGMENT – GARNISHMENT – MD. RULE 3-646**

Garnishment of wages under Sections 15-601 through 15-606 of the Commercial Law
Article is valid when the Maryland court has original, continuing and ancillary
jurisdiction over the judgment debtor and the judgment debtor's employer/garnishee has
sufficient contact with the State.

Circuit Court for Montgomery County,
Maryland
Case No. 8976DCA
Argued: January 12, 2016

IN THE COURT OF APPEALS
OF MARYLAND

No. 54

September Term, 2015

_____

DANIEL M. MENSAH

v.

MCT FEDERAL CREDIT UNION

_____

Barbera, C.J.
Battaglia
Greene
Adkins
McDonald
Watts
Hotten,

JJ.

_____

Opinion by Battaglia, J.

_____

Filed: February 24, 2016

Daniel M. Mensah, Petitioner, while living in Maryland, in 2006, opened a personal line of credit as well as a credit card account with MCT Federal Credit Union ("MCT"), Respondent. Mr. Mensah, over the next several years, accumulated $19,657.66 in credit card debt and amassed $14,951.55 on the line of credit. MCT filed two complaints in 2010 against Mr. Mensah in the District Court of Maryland for Montgomery County, one for the outstanding balance on the credit card account and another for the money owed on the line of credit. Mr. Mensah, by the time of the filings, had moved to Texas. After several failed attempts at service of Mr. Mensah, substitute service was achieved. Mr. Mensah failed to answer either complaint, and MCT was awarded default judgments in the amount of $21,270.12 on the credit card claim and $15,848.64 on the line of credit. Mr. Mensah failed to note any appeal.

MCT, in 2013, secured two writs of garnishment in the same actions from the District Court pursuant to Sections 15-601 through 15-606 of the Commercial Law Article, Maryland Code (1978, 2013 Repl. Vol.), as implemented by Rule 3-646.[1] The

---

[1] In 2013 Rule 3-646 provided, as it does now, in relevant part:

(a) Applicability. This Rule governs garnishment of wages under Code, Commercial Law Article, §§ 15-601 through 15-606.

(b) Issuance of Writ. The judgment creditor may obtain issuance of a writ of garnishment by filing in the same action in which the judgment was obtained a request that contains (1) the caption of the action, (2) the amount owed under the judgment, (3) the name and last known address of the judgment debtor, and (4) the name and address of the garnishee. Upon filing of the request, the clerk shall issue a writ of garnishment directed to the garnishee together with a blank answer form provided by the clerk.

(continued …)

writs were served on the resident agent[2] of Mr. Mensah's employer, BASF,[3] as well as on its payroll department in New Jersey. Although BASF answered and did not contest the garnishment, Mr. Mensah filed motions to quash the writs, arguing that his wages, earned solely for work he performed in Texas, were not subject to garnishment in Maryland. The District Court denied both motions to quash, and Mr. Mensah appealed to the Circuit Court for Montgomery County, which affirmed.

Mr. Mensah petitioned this Court for certiorari, which was granted in *Mensah v. MCT Federal Credit Union*, 444 Md. 638, 120 A.3d 766 (2015), to answer the following questions:

> I. Does Maryland law allow a judgment creditor (MCT) to garnish wages earned by a judgment-debtor employee (Mensah) exclusively for services/work performed in Texas pursuant to a Writ issued by a Maryland Court?

---

(… continued)

\* \* \*

> (d) Service. The writ and answer form shall be served on the garnishee in the manner provided by Chapter 100 of this Title for service of process to obtain personal jurisdiction and may be served in or outside the county. Upon issuance of the writ, a copy of the writ shall be mailed to the debtor's last known address. Subsequent pleadings and papers shall be served on the creditor, debtor, and garnishee in the manner provided by Rule 1-321.

Rule 3-646.

[2] BASF was required to designate a resident agent under Section 7-203 of the Corporations and Associations Article. Md. Code Ann., § 7-203 of the Corporations and Associations Article.

[3] BASF is a multi-national company producing and marketing chemicals with operations throughout the world and the United States. https://www.basf.com/us/en.html (https://perma.cc/TQR8-JH8H). BASF maintains a training center located in Maryland. http://www.refinish.basf.us/facilities (https://perma.cc/YAT3-QQUB).

II. Does Maryland law allow a judgment creditor (MCT) to garnish wages earned by a judgment-debtor employee (Mensah) exclusively for services/work performed in Texas pursuant to a Writ issued by a Maryland Court and served on an employer in New Jersey?[4]

The underlying judgments for $21,270.12 and $15,848.64 secured by MCT against Mr. Mensah are not in issue, because no appeal was taken by Mr. Mensah to challenge them. The sole issue before us involves judgment enforcement, i.e. whether the District Court in its continuing and ancillary jurisdiction could order wages earned outside of Maryland by a non-resident judgment debtor to be subject to garnishment served upon an employer with continuous and systematic business in Maryland.[5] We shall answer yes to this question.

One opportunity to garnish wages outside of the jurisdiction in which a money judgment has been entered is to enroll the judgment in the "foreign" jurisdiction, pursuant to the Uniform Enforcement of Foreign Judgments Act ("UEFJA"), which was approved by the National Conference of Commissioners on Uniform State Laws in 1948 and revised in 1964. *See* Unif. Enforcement of Foreign Judgment Act (revised 1964) 13 U.L.A. 156 (2002). The UEFJA enables a party awarded a judgment in one state to enforce that judgment in another state by recording or "enrolling" the judgment in the

---

[4] Because the Writ of Garnishment also was served on BASF's resident agent in Maryland, we need not reach this issue. Md. Code Ann. (1975, 2013 Repl. Vol.), § 1-401(a) of the Corporations and Associations Article (service on a resident agent "constitutes effective service of process" on the corporation).

[5] Mr. Mensah had moved to vacate the judgments entered in the District Court based upon improper service of process, but his motions were denied. The Circuit Court affirmed the denial; Mensah did not include this issue in his Petition for Certiorari. Accordingly, there is no issue before us as to whether the District Court had personal jurisdiction over Mr. Mensah when it entered the judgments.

latter state.[6] The enrolled "foreign" judgment is then treated as though it were a judgment of the receiving state.[7]

Maryland adopted the 1964 revision of the UEFJA with modification in Chapter 497 of the Maryland Laws of 1987. Codified in Sections 11-801 through 11-807 of the Courts and Judicial Proceedings Article, Maryland Code (1987, 2013 Repl. Vol.), the UEFJA offers a judgment creditor holding a valid judgment from another state or

---

[6]Section 2 of the UEFJA provides:

> **Section 2.** [*Filing and Status of Foreign Judgments.*] A copy of any foreign judgment authenticated in accordance with the act of Congress or the statutes of this state may be filed in the office of the Clerk of any [District Court of any city or county] of this state. The Clerk shall treat the foreign judgment in the same manner as a judgment of the [District Court of any city or county] of this state. A judgment so filed has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating, or staying as a judgment of a [District Court of any city or county] of this state and may be enforced or satisfied in like manner.

Unif. Enforcement of Foreign Judgment Act (revised 1964) 13 U.L.A. 163 (2002).

[7] The National Conference of Commissioners on Uniform State Laws summarized the effect of the UEFJA as follows:

> A state that enacts the Revised Uniform Enforcement of Foreign Judgments Act permits enforcement of a judgment of another state upon the mere act of filing it in the office of a Clerk of Court. The act of filing the foreign judgment gives it the effect of being a judgment of the court in the state in which it is filed. The process of enforcement then goes forward as if the judgment is a domestic one.

http://www.uniformlaws.org/ActSummary.aspx?title=Enforcement%20of%20Foreign%20Judgments%20Act (https://perma.cc/5FWR-AA8S).

jurisdiction a way to enforce that judgment in Maryland.[8] The judgment creditor may file, or enroll, the judgment in a court in Maryland, where the judgment will then be treated as though it were a judgment of the Maryland court and may, among other things, seek its enforcement.[9] Notice of the enrollment of the judgment must be provided to the judgment debtor.[10]

---

[8] A "foreign" judgment is "a judgment, decree, or order of a court of the United States or of any other court that is entitled to full faith and credit in this state." Md. Code Ann. (1987, 2013 Repl. Vol.), § 11-801 of the Courts and Judicial Proceedings Article.

[9] Section 11-802 of the Courts and Judicial Proceedings Article, Maryland Code (1987, 2013 Repl. Vol.), provides:

> **In general**
> (a)(1)(i) Except as provided in subparagraphs (ii) and (iii) of this paragraph, a copy of any foreign judgment authenticated in accordance with an act of Congress or statutes of this State may be filed in the office of the clerk of a circuit court.
>
> > (ii) If the face amount of the judgment is $2,500 or less, the copy shall be filed with the clerk of the District Court.
> >
> > (iii) If the face amount of the judgment is not more than a jurisdictional amount described in § 4-401 of this article, but more than $2,500, the copy may be filed either with the clerk of the District Court or in the office of the clerk of a circuit court.
>
> > (2) The clerk shall treat the foreign judgment in the same manner as a judgment of the court in which the foreign judgment is filed.
>
> **Effect of foreign judgment**
> (b) A filed foreign judgment has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, staying, enforcing, or satisfying as a judgment of the court in which it is filed.

[10] Section 11-803 of the Courts and Judicial Proceedings Article, Maryland Code (1987, 2013 Repl. Vol.), provides, in relevant part:

* * *

(continued …)

5

The State of Texas also has adopted the 1964 revision of the UEFJA, codified in 1985 in Sections 35.001 through 35.008 of the Texas Civil Practices and Remedies Code. Tex. Civ. Prac. & Rem. Code §§ 35.001–35.008. Despite the ability to enroll the Maryland judgment in Texas, however, MCT did not do so. Apparently, Section 28 of Article 16 of the Texas Constitution prohibits a wage garnishment for any purpose other than the enforcement of child support or spousal maintenance.[11] Tex. Const. Art. 16 § 28. To that end, Section 42.001 of the Texas Property Code exempts "current wages for personal services, except for the enforcement of court-ordered child support payments[.]"[12] Tex. Prop. Code § 42.001(b)(1).

---

(… continued)

**Notice of filing foreign judgment**
(b)(1) The clerk promptly shall mail notice of the filing of the foreign judgment to the judgment debtor at the address given and shall note the mailing in the docket.

* * *

[11] Section 28 of Article 16 of the Texas Constitution provides:

No current wages for personal service shall ever be subject to garnishment, except for the enforcement of court-ordered:
   (1) child support payments; or
   (2) spousal maintenance.

[12] Section 42.001 of the Texas Property Code provides, in relevant part:

(a) Personal property, as described in Section 42.002, is exempt from garnishment, attachment, execution, or other seizure if:
   (1) the property is provided for a family and has an aggregate fair market value of not more than $100,000 , exclusive of the amount of any liens, security interests, or other charges encumbering the property; or

(continued …)

6

An alternative garnishment method that MCT sought to utilize involved the satisfaction of the money judgment through wage attachment served on the employer's, BASF, Maryland resident agent, pursuant to Sections 15-601 *et seq.* of the Commercial Law Article, Maryland Code (1978, 2013 Repl. Vol.). "Wages," for the purpose of attachment, is defined as "all monetary remuneration paid to any employee for his employment" in Section 15-601(c) of the Commercial Law Article, without any indication as to where the remuneration must be earned. The term "employee", referenced in Section 15-601(c), "includes an employee *whether he is a resident or nonresident of the State*." (emphasis added). All wages of an employee that are and become payable are subject to a lien to satisfy the judgment:

> (a) When an attachment is levied against the wages of a judgment debtor, it shall constitute a lien on all attachable wages that are payable at the time the attachment is served or which become payable until the judgment, interest, and costs, as specified in the attachment, are satisfied.

> (b) Any waiver of the limitations contained in § 15-601.1(b)(1) and (2) of this subtitle is void.

Section 15-602 of the Commercial Law Article.

---

(… continued)
> (2) the property is owned by a single adult, who is not a member of a family, and has an aggregate fair market value of not more than $50,000, exclusive of the amount of any liens, security interests, or other charges encumbering the property.

> (b) The following personal property is exempt from seizure and is not included in the aggregate limitations prescribed by Subsection (a):
> (1) current wages for personal services, except for the enforcement of court-ordered child support payments[.]

Maryland Rule 3-646 "governs garnishment of wages under Code, Commercial Law Article, §§ 15-601 through 15-606." Rule 3-646(a). The Rule, under subsection (b), permits a judgment creditor, by "filing in the same action in which the judgment was obtained" a request, including the caption of the action, the money owed under the judgment, the name and address of the judgment debtor and the name and address of the garnishee—a third party who possesses property of the debtor, generally the debtor's employer in a situation involving wage garnishment—to obtain a writ of garnishment. The writ, when issued, must contain the information from the judgment creditor's request and inform the garnishee regarding its need to answer, as well as inform the judgment debtor of his right to contest the garnishment. Rule 3-646(c).

Upon issuance, the writ of garnishment and an answer form are served upon the garnishee, and a copy is mailed to the judgment debtor. Rule 3-646(d). Subsection (e) of 3-646 pertains to the response by the garnishee, and requires an answer within 30 days indicating whether the debtor is an employee, and, if so, the current pay rate and any existing wage liens. The garnishee is also permitted, under subsection (e), to assert any defenses it may have or any that might be available to the debtor, and the judgment debtor may, at any time, assert a defense or an objection to the garnishment.

In the event that the garnishee does not timely answer, the judgment creditor may move for a contempt order under subsection (f). The garnishee may deny that the debtor is an employee. If either the garnishee or the debtor asserts a defense or objection, a hearing is required. Rule 3-646(g). Subsection (i) sets forth the procedure for the garnishee's withholding and remittance of the wages to the judgment creditor, who must

8

account for the payments received in accordance with subsection (j). Should the debtor's employment cease, the garnishment terminates 90 days thereafter. Rule 3-646(k).

A wage garnishment obviously, thus, continues from, and is ancillary to, the original judgment entered by a court and is not itself an original action. *See Medical Mut. Liability Ins. Soc. of Maryland v. Davis*, 389 Md. 95, 883 A.2d 158 (2005) (discussing garnishment of property, other than wages, in the Circuit Court under Rule 2-645).[13] In *Davis*, we stated:

> Although once the issue is joined between the judgment creditor and the garnishee, the garnishment proceeding proceeds as any original action, with the judgment creditor as plaintiff and the garnishee as defendant and is governed by the rules applicable to civil actions, *such actions are not original actions, independent of the actions out of which the judgments sought to be enforced emanate. Garnishment proceedings, rather, are certainly related to, and, indeed are ancillary to such actions.* Thus, the amount of the judgments obtained in the underlying action, to which the garnishment action relates and, indeed, depends, is information necessary for the issuance of a writ of garnishment. Also, the judgment itself conclusively establishes the judgment debtor's obligation to the judgment creditor. Indeed, the purpose of a garnishment proceeding is to satisfy money judgments with property of the judgment debtor that is in the hands of third persons. Pursuant to that purpose, garnishment proceedings necessarily must determine whether the garnishee has any funds, property or credits which belong to the judgment debtor.

*Id.* at 117, 883 A.2d at 171 (emphasis added). *See also Goodyear Tire & Rubber Co. v. Ruby*, 312 Md. 413, 418, 540 A.2d 482, 484 (1988); *Livingston v. Naylor*, 173 Md. App. 488, 510, 920 A.2d 34, 47 (2007).

---

[13] Rule 2-645 governs the garnishment of property in the Circuit Court, and is procedurally similar to Rule 3-646, which governs wage garnishment in the District Court.

9

Mr. Mensah and MCT differ as to the extent of the reach of the wage garnishments ordered by the District Court of Maryland in this case because of Mr. Mensah's Texas residency, both relying on two cases involving wage garnishment, one decided by this Court, *Goodyear Tire & Rubber Co.*, 312 Md. at 413, 540 A.2d at 482, and the other by the Court of Special Appeals, *Livingston*, 173 Md. App. at 488, 920 A.2d at 34. In *Goodyear*, Patricia Ruby was awarded an absolute divorce from Robert Ruby, as well as custody of their children and child support. Mr. Ruby, who was a resident of Texas, was served in Maryland with the original complaint, but failed to appear for any of the proceedings. He subsequently failed to pay child support, and Mrs. Ruby requested a wage garnishment of her former husband's earnings, pursuant to Sections 10-120 through 10-126 of the Family Law Article, Maryland Code (1984), in the Circuit Court for Prince George's County, from which she had obtained the divorce and award of child support. The Circuit Court issued the writ, and Mr. Ruby's employer's, Goodyear, resident agent was served with the wage garnishment.

Goodyear, however, sought to quash the wage garnishment in the Circuit Court, arguing that the request for the garnishment was a new claim for relief that would have required personal jurisdiction over both Mr. Ruby and Goodyear.[14] The Circuit Court

---

[14] We identified two issues in the case:

> The first is whether the use of first class mail was sufficient to afford adequate notice of the proceedings to the alleged debtor, a resident of Texas. The second is whether the non-resident employer, The Goodyear Tire and Rubber Company (Goodyear), has sufficient contacts with this

(continued …)

disagreed, as did we. We concluded that the wage garnishment did not constitute a new cause of action but was within the exercise of the continuing, ancillary jurisdiction of the circuit court:

> The right to exercise personal jurisdiction over Mr. Ruby arose when he was served with the original complaint, and extended to all the relief sought by that complaint. Moreover, the enforcement and modification of relief granted pursuant to that complaint remains within the continuing jurisdiction of the circuit court, subject to any due process requirement that the party against whom the modification or enforcement is sought be given reasonable notice and an opportunity to be heard.

*Id.* at 418, 540 A.2d at 484. As a result, we determined that the relief entered in the case against Mr. Ruby remained within the continuing jurisdiction of the circuit court and that "service of the notice [of garnishment] by ordinary mail was sufficient" to meet the requirements of due process. *Id.* at 420, 540 A.2d at 485.

We also addressed whether there were sufficient contacts between Goodyear and Maryland to warrant the exercise of personal jurisdiction over it. Although the record was inadequate to establish Goodyear's Maryland contacts, we recognized "there may be contacts reflecting continuous and systematic general business conduct that will be sufficient to support the exercise of jurisdiction over a claim that neither arises out of nor is directly related to the conduct of the [garnishee] within the forum." *Id.* at 422, 540

---

(… continued)
> State to justify the exercise of judicial jurisdiction over it in a matter wholly unrelated to those contacts.

*Goodyear Tire & Rubber Co. v. Ruby*, 312 Md. 413, 415, 540 A.2d 482, 482-83 (1988).

11

A.2d at 486. We remanded the case to explore whether Goodyear's contacts in Maryland reflected continuous and systematic general business conduct.

In the second case, *Livingston*, 173 Md. App. at 488, 920 A.2d at 34, a money judgment obtained by Mr. Naylor from a North Carolina court for $50,000, resulting from injuries sustained when Livingston assaulted Mr. Naylor and robbed him, was enrolled in Maryland under the UEFJA. *Id.* at 490-91, 920 A.2d at 35-36. Although Mr. Naylor had begun garnishment proceedings in North Carolina, wages were exempt from garnishment in that state, which led him to enroll the judgment in Maryland. *Id.* at 491-92, 920 A.2d at 36.

Livingston, a resident of North Carolina, had worked several years for Marriott at its various locations in North Carolina, Virginia and, briefly, Maryland. Livingston had served as an interim manager at several Marriott hotels in Maryland in 2004, for a short time, prompting Mr. Naylor to seek enforcement of his judgment in this state. *Id.* at 492, 920 A.2d at 36. Livingston and Marriott challenged Maryland's exercise of jurisdiction regarding the enrolled judgment and moved to quash the writ. *Id.* at 492, 920 A.2d at 36-37. The primary issue before the Court of Special Appeals was whether, pursuant to the enrolled foreign judgment, Maryland could affect garnishment of wages of a non-resident extraterritorially in North Carolina.

Our intermediate appellate court eventually determined that the Maryland courts, when enforcing an enrolled judgment, could not order the garnishment of wages earned in North Carolina. An enrolled judgment, though valid, was subject to defenses in enforcement:

> The Court of Appeals recognized in *Smith Pontiac* that there is a "distinction between recognition and enforcement" of a foreign judgment. "While this Court must recognize this judgment [domesticated in Maryland pursuant to the UEFJA] as a valid Maryland judgment, this Court also may inquire into post-judgment defenses in order to determine the extent to which it is enforceable."

*Id.* at 500-01, 920 A.2d at 42 (internal citation omitted) (alteration original), quoting *Mike Smith Pontiac, GMC, Inc. v. Mercedes-Benz of North America, Inc.*, 356 Md. 542, 562, 741 A.2d 462, 472-73 (1999).

The Court of Special Appeals, however, recognized a distinction between a Maryland court's jurisdiction when enforcing a judgment entered in a case originating in Maryland and a judgment enrolled in Maryland, taking into account two Supreme Court cases which had not been discussed in *Goodyear*, those being *Shaffer v. Heitner*, 433 U.S. 186, 97 S. Ct. 2569, 53 L. Ed. 2d 683 (1977), and *Rush v. Savchuk*, 444 U.S. 320, 100 S. Ct. 571, 62 L. Ed. 2d 516 (1980), both cases involving pre-judgment garnishment.

In *Shaffer*, Heitner, a non-resident shareholder had brought a derivative action in Delaware against Greyhound Corporation, its wholly owned subsidiary and several officers and directors, none of whom was a resident of Delaware. *Id.* at 189-90, 97 S. Ct. at 2572, 53 L. Ed. 2d at 688-89. Heitner alleged that, as a result of violating their duties to Greyhound, the officers and directors caused Greyhound to engage in activities that lead to its liability for damages in a private antitrust suit and a fine in a criminal contempt

action. *Id.* In addition, Heitner moved for, and was granted, a sequestration order[15] on the defendant's property located in Delaware, which consisted of Greyhound's stock certificates which, under Delaware law, were deemed to be located in Delaware regardless of their actual physical location. *Id.* at 190-92, 97 S. Ct. at 2572-73, 53 L. Ed. 2d at 689-90. The defendants asserted that they lacked sufficient contacts with Delaware and, therefore, the court lacked jurisdiction over them and that the ex parte sequestration violated due process. *Id.* at 193, 97 S. Ct. at 2573-74, 53 L. Ed. 2d at 691. The Supreme Court concluded that, where the personal jurisdiction asserted by the state is *in rem*, based upon the presence of property owned by the defendant within the state, the mere presence of the property alone is not sufficient to confer jurisdiction. *Id.* at 209, 97 S. Ct. at 2582, 53 L. Ed. 2d at 701 ("Thus although the presence of the defendant's property in a State might suggest the existence of other ties among the defendant, the State, and the litigation, the presence of the property alone would not support the State's jurisdiction."). Due process, therefore, according to the Court, required an inquiry into "the relationship among the defendant, the forum, and the litigation". *Id.* at 204, 97 S. Ct. at 2580, L. Ed. 2d at 698. The primary issue in that case involved pre-judgment attachment, but the Court left open the question of whether an inquiry into personal jurisdiction is required for post-judgment enforcement, stating in footnote 36:

> Once it has been determined by a court of competent jurisdiction that the
> defendant is a debtor of the plaintiff, there would seem to be no unfairness

---

[15] A sequestration order, provided for under Delaware Law, permitted the court to compel the appearance of non-resident defendants by seizing their property. *Shaffer v. Heitner*, 443 U.S. 186, 190 n.4, 97 S. Ct. 2569, 2572 n.4, 53 L. Ed. 2d 683, 689 n.4 (1977).

in allowing an action to realize on that debt in a State where the defendant has property, whether or not that State would have jurisdiction to determine the existence of the debt as an original matter.

*Id.* at 210 n.36, 97 S. Ct. at 2583 n.36, L. Ed. 2d at 702 n.36.

In the second case, *Rush*, 444 U.S. at 322, 100 S. Ct. at 574, 62 L. Ed. 2d at 521, the Supreme Court revisited the issue of a state's exercise of jurisdiction over a non-resident defendant in a pre-judgment attachment context. In the case, Savchuk, as a passenger in a car driven by Rush, was injured when they were involved in an automobile accident. *Id.* State Farm Mutual Automobile Insurance Company insured the car driven by Rush under a policy issued in Indiana, which had a guest statute. *Id.* Any claim brought by Savchuk would have been barred. *Id.* Savchuk, however, had moved with his parents to Minnesota the year after the accident and sued Rush, in Minnesota, by "attempt[ing] to obtain *quasi in rem* jurisdiction by garnishing State Farm's obligation under the insurance policy to defend and indemnify Rush[,]" as State Farm also did business in Minnesota. *Id.* at 322, 100 S. Ct. at 574-75, 62 L. Ed. 2d at 521.

The Supreme Court referred to its decision in *Shaffer* requiring sufficient contacts between the forum and the non-resident defendant in addition to the presence of the defendant's property in the forum and inquired into Rush's contacts with Minnesota. *Id.* at 328, 100 S. Ct. at 577, 62 L. Ed. 2d at 524. Although State Farm was present in Minnesota, Rush had no control over that decision. *Id.* at 329, 100 S. Ct. at 577, 62 L. Ed. 2d at 525. In addition, no significant contacts existed between the litigation and Minnesota (as the accident had occurred in Indiana), nor did the presence of State Farm's

obligation provide a viable basis for any contact between Rush and the State. *Id.* As such, the Supreme Court concluded that:

> Here, however, the defendant has *no* contacts with the forum, and the Due Process Clause does not contemplate that a state may make binding a judgment . . . against an individual or corporate defendant with which the state has no contacts, ties, or relations.

*Id.* at 332-33, 100 S. Ct. at 579, 62 L. Ed. 2d at 528 (emphasis original) (internal quotation omitted). The presence, therefore, of a garnishee in the forum state was not alone sufficient for the court to exercise personal jurisdiction over a non-resident defendant absent any other contacts with the forum state.

In addressing the implications in *Livingston* of *Shaffer* and *Rush*, the Court of Special Appeals noted that, "The Maryland appellate courts have not, to date, addressed note 36 of *Shaffer* and the extent to which *Shaffer* imposes any jurisdictional limits upon post-judgment collection proceedings[,]" and pointed to several cases that distinguished *Shaffer* and *Rush* when post-judgment garnishment was sought under an original judgment in the recovery state. *Livingston*, 173 Md. App. at 510, 920 A.2d at 47. The cases cited included *Smith v. Lorillard, Inc.*, 945 F.2d 745 (4th Cir. 1991), *Levi Strauss & Company v. Crockett Motor Sales, Inc.*, 739 S.W.2d 157 (Ark. 1987), *State Department of Revenue v. Control Data Corporation*, 713 P.2d 30 (Or. 1986). The *Livingston* opinion also referred to our opinion in *Goodyear*, which the Court of Special Appeals noted had not explicitly addressed *Shaffer*. *Id.* at 511, 920 A.2d at 48.

The Court of Special Appeals, then, determined that there was "a lack of fair play and substantial justice" in allowing the garnishment of wages, pursuant to a judgment

only enrolled in Maryland, earned by a non-resident working at a location wholly outside the State of Maryland, "in the *absence of some other connection between Maryland and either the [non-resident] wage-earner or the underlying controversy* that resulted in the original [out of state] judgment[.]" *Id.* at 517, 920 A.2d at 51 (emphasis added). The court then distinguished the facts in *Livingston* from a garnishment resulting from an original judgment entered in a Maryland court:

> In this case, we are not dealing with a situation in which Maryland had any prior contact with the underlying litigation, in contrast to the employees whose wages were garnished pursuant to a court's ancillary or continuing jurisdiction[.]

*Id.* at 520, 920 A.2d at 53. As a result, the Court of Special Appeals concluded that, "the only *res* owned by Livingston within the borders of this State and properly garnishable in this State would be the wage obligation owed to Livingston for services rendered while Livingston was physically present in this State." *Id.* at 521, 920 A.2d at 54. Thus, although the intermediate appellate court determined that the North Carolina judgment was valid and properly enrolled, our brethren only enforced the wage garnishment on wages earned in Maryland, because the wages earned in North Carolina were beyond the reach of a judgment only enrolled in Maryland.

Juxtaposing these two cases, it becomes apparent that the two are complementary, and both guide and inform the present case:

|  | *Goodyear* | *Livingston v. Naylor* |
| --- | --- | --- |
| Brief facts: | A resident plaintiff was awarded a default judgment in the Circuit Court for Prince George's County | A non-resident plaintiff enrolled a North Carolina default judgment in Maryland seeking to garnish |

| | | |
|---|---|---|
| | against a non-resident defendant. The plaintiff sought to enforce her judgment through garnishment of the defendant's wages, earned in Texas, from his employer in Maryland. | wages owed to the non-resident judgment debtor by his employer. The non-resident judgment debtor briefly worked in Maryland for the employer, but currently resides in and earns wages for work performed in North Carolina. |
| 1. Sufficiency of contacts between the State and the garnishee or judgment debtor. | The Court of Appeals focused on the sufficiency of the contact between Maryland and the garnishee in order to determine the fairness of exercising jurisdiction over the garnishee. Due to the inadequacy of the record regarding Marriott's contacts with Maryland, the case was remanded for further proceedings. | The Court of Special Appeals focused on the sufficiency of the contact between Maryland and the judgment debtor to ensure that fair play and substantial justice were not lacking. The court determined Livingston's contact with Maryland supported the exercise of jurisdiction over him and his wages, but only to the extent of wages earned in Maryland. |
| 2. The connection, if any, between Maryland and the underlying controversy. | The request for child support arose from, and was ancillary to, the original judgment of divorce entered by the Circuit Court for Prince George's County. | The judgment was an enrolled judgment from a North Carolina court; Maryland had no connection with the underlying controversy that gave rise to the judgment. |
| 3. Jurisdiction over the non-resident defendant in light of *Shaffer* and *Rush*. | The Court of Appeals did not address jurisdiction in light of *Shaffer* and *Rush*. | The Court of Special Appeals considered the application of the principles in *Shaffer* to post-judgment jurisdiction over a non-resident defendant in the context of a foreign enrolled judgment. |

Mr. Mensah argues, of course, that the result in *Livingston* bars MCT from garnishing any wages earned by him outside of Maryland, while MCT suggests that *Goodyear* is dispositive. We determine that consideration of the tenets of *Goodyear* and *Livingston*, guided by what the Supreme Court held in *Shaffer* and *Rush*, leads to a conclusion that MCT's post-judgment garnishment of Mr. Mensah's wages earned in Texas was an appropriate exercise of the original and ancillary jurisdiction of the district court that had entered judgment against Mr. Mensah, which also had jurisdiction over the garnishee, BASF, as a result of the garnishee's continuous and systematic business conduct in Maryland.

*Goodyear* is "on all fours" with the present case and gilded with BASF's business presence in Maryland as well as its assent to the wage garnishments.

*Livingston's* complementary analysis supports a post-judgment garnishment of wages earned in a different state which arose from the continuing and ancillary jurisdiction of the district court.[16]

---

[16] The cases cited by the Court of Special Appeals in *Livingston* regarding post-judgment garnishment of a non-resident's wages earned outside of the state, when the state has a connection to the underlying litigation, support our conclusion. *Smith v. Lorillard, Inc.*, 945 F.2d 745 (4th Cir. 1991); *Levi Strauss & Company v. Crockett Motor Sales, Inc.*, 739 S.W.2d 157 (1987); *State Department of Revenue v. Control Data Corporation*, 713 P.2d 30 (Or. 1986). In *Smith*, the Fourth Circuit affirmed the post-judgment garnishment of a non-resident judgment debtor's wages ordered by a Kentucky court pursuant to two judgments entered in Kentucky and served upon the garnishee in Kentucky. 945 F.2d at 746 ("*Shaffer* sets limits only on the *original* assertion of *in rem* and quasi *in rem* jurisdiction over non-resident defendants, not on the imposition of an ancillary order of garnishment flowing from a judgment for which the court originally had *in personum*

(continued …)

In conclusion, MCT could enforce the money judgments against Mr. Mensah through garnishments of Mr. Mensah's wages earned in Texas through the exercise of the original and ancillary jurisdiction of the district court that entered the judgments and because of BASF's business contacts in the State.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED; COSTS IN THIS COURT AND THE CIRCUIT COURT TO BE PAID BY THE PETITIONER.**

---

(… continued)

jurisdiction over the creditor of the garnishee (*i.e.*, the defendant in the underlying action against whom the judgment was obtained)."). The Supreme Court of Arkansas, in *Levi Strauss*, affirmed the trial court's exercise of jurisdiction when it ordered the post-judgment garnishment of a non-resident's out of state wages pursuant to an Arkansas judgment. 739 S.W.2d at 159 ("We would first note that [the judgment creditor] did not initiate the garnishment action as a means by which to adjudicate a claim against [the debtor]; it had already obtained a judgment against [the debtor] at the time she lived and worked in Arkansas. . . . Suffice it to say, [the debtor's] contacts, past and present, with this state are sufficient for us to sustain the trial court's exercise of jurisdiction in the garnishment proceeding below."). In *Control Data Corp.*, the Supreme Court of Oregon affirmed the tax court's garnishment of a non-resident's wages earned in Minnesota pursuant to a judgment obtained in Oregon by the Department of Revenue. 713 P.2d at 32 ("Here the creditor, the Department of Revenue, did not attach assets in the forum state as a way of getting jurisdiction to adjudicate a claim against an absent debtor. This creditor already has a judgment against the debtor, a judgment for unpaid taxes on income earned in Oregon while the debtor lived in Oregon. The Department seeks only to collect this judgment by reaching an asset belonging to the debtor in the hands of Control Data, a third party that unquestionably is present in Oregon.").